**Roger J. BEHM, Plaintiff and Appellant,**

v.

**Frances M. BEHM, Defendant and Appellee.**

**Civ. No. 870387.**

Supreme Court of North Dakota.

July 19, 1988.

McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellant, argued by Mark V. Larson, Minot. Appearance by Orlin W. Backes.

Lundberg, Nodland, Schulz & Lervick, Bismarck, for defendant and appellee, argued by Irvin B. Nodland.

MESCHKE, Justice.

Roger Behm appealed a decree of divorce from Frances Behm, arguing that the trial court erred in awarding spousal support, in valuing certain property, and in dividing a profit-sharing fund and inherited property. We affirm.

Roger and Frances married in 1966 and divorced in 1987, when their three children, Steve, Michelle, and Nicholas, were ages 19, 12, and 7.

After they were married, Frances worked outside of the home and taught until 1974. Thereafter, she was a homemaker.

Roger worked part time and completed his college degree during the first two years of the marriage. Then he taught a year and worked another year with a large corporation in Minnesota. In 1970, the couple returned to Minot where Roger worked in the successful Behm family enterprises until 1985. At that time, Roger separated from employment with the Behm family enterprises, but he continued as a director and was paid $30,000 a year by the Behm Family Companies.

The trial court ordered Roger to pay support of $700 per month to Frances for the two younger children in her physical custody. The trial court ordered Roger to pay Frances $1,250 per month spousal support and divided all property nearly equally.

## SUPPORT

■ The trial court awarded an amount equal to one-half of Roger's monthly $2,500 "director's fee" from the Behm Family Companies to Frances as support. Roger complained that this was too much, in view of his available resources, and that there was "no definitive date for its termination."

The trial court found:

"The Court is not unmindful of the fact that Frances will be returning to school to receive her degree in [secondary] education and needs some spousal support for rehabilitation. However, by awarding to her one-half of the Director's Fees of the $30,000.00 from the Behm Family Corporation, which is really as Roger calls it, Severance Pay, she is properly provided for at least until the Corporations are sold. At that time, of course, she should have sufficient income or liquid assets to return to school and rehabilitate herself. The Court calls it spousal

support to be sure that it has continuing jurisdiction, if need be."

Roger argued that the monthly director's fee of $2,500 was his only dependable source of living expenses. While he earned about $2,300 a month from his Conoco gas station in 1986, this was largely offset by losses from his other current businesses, A & W Restaurant in Bismarck, Take and Bake pizza operations in Minot and Bismarck, and a Mini Doughnut Wagon. Besides, he claimed, gas station earnings were dwindling in 1987. Thus, Roger argued, outgo of $700 child support and $1,250 spousal support, together with social security taxes, did not leave him enough to live on.

Frances countered that his claims of income and expenses were not credible, particularly in view of expenditures he had made when he claimed he was unable to make interim support payments.

Frances had no other income, and received no income-producing property in the property distribution. Thus, it is plain that Frances was in no immediate position to support herself in the aftermath of the divorce. Spousal support was appropriate to allow her to continue her accustomed standard of living. *Wheeler v. Wheeler,* 419 N.W.2d 923 (N.D.1988); *Bagan v. Bagan,* 382 N.W.2d 645 (N.D.1986).

"[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." NDRCivP 52(a). Based on Roger's recent income and Frances' present situation, we conclude that the trial court had sufficient evidence to award spousal support of $1,250.

While no term of spousal support was fixed, the trial court made it clear that it was coordinated with the continuation of the payment of the $2,500 monthly director's fee from the Behm Family Companies. The trial court retained continuing jurisdiction over spousal support. If the director's fee is discontinued, or the Behm enterprises sold (so that Frances has income-producing assets), Roger can ask to reduce or eliminate spousal support. The trial court has the power to modify spousal

support when circumstances change materially. *Wheeler v. Wheeler, supra.*

Furthermore, in a post-judgment hearing, the trial court noted that spousal support could be "discontinued as soon as ... she's rehabilitated." The trial court recognized that Frances should be able to make substantial strides towards self-support in subsequent years. She is a qualified elementary teacher, but she testified that teaching jobs were scarce in the Minot vicinity. She is taking additional college courses for accreditation as a secondary teacher to increase her opportunities. The trial court did not attempt to predict when Frances might be able to support herself in keeping with her accustomed standard of living, if at all. But, we do not think that this detracts from the award of spousal support. The trial court's retained power to modify spousal support is a sufficient limitation.

Under the circumstances, we conclude that the lack of a term for spousal support was not clearly erroneous.

## VALUES

Roger complained that the trial court over-valued two units of property assigned to him, thus skewing property division.

■ The Behm family owned 480 acres of farmland adjoining the highway west of Minot. The trial court valued it at $480,000, and Roger's one-tenth share at $48,000. Roger argued his share should have been valued at $34,000, following the most recent expert appraisal of the land in his mother's 1982 estate. But the chief executive officer of Behm Family Companies testified that the land was valued at $1,000 an acre for family dealings with financial institutions. We conclude that there was sufficient evidence to support the value set by the trial court.

■ Roger argued that the Dakota Square Conoco gas station had no value because it "was obtained with one hundred percent financing and is in the midst of a gasoline price war." He also argued that uncertainties about public access to the location depress its value. Frances' expert valued it at $95,000, but Roger claims that valuation was completely discredited by the expert's lack of knowledge about the business and its access problems. While the station netted over $27,000 income in 1986, Roger maintained that a gas war and other problems were cutting into that income during 1987. The trial court valued the station at $50,000. We conclude that value was within the range of evidence and was not clearly erroneous.

## PROPERTY DIVISION

■ Roger complained about a $41,000 payment that he was ordered to make to Frances which the trial court described as a distribution of one-half of an $82,000 profit-sharing fund with the Behm Family Companies. This fund was withdrawn by Roger while the divorce was pending. Roger insisted that he didn't have it and had spent it, partly for the benefit of Frances and the family home, and the balance to reduce "marital" indebtedness. Frances contended that it was expended in violation of an interim order. The specific interim order restrained Roger from "disposing of or encumbering any of their property, real or personal, during the pendency of this action or until further order of the Court, except as may be necessary in the usual and ordinary course and conduct of the business," and went on to specifically refer to the $82,000 "Behm's Retirement Plan" fund. It is clear that Roger neither sought approval of the trial court nor consent of Frances in disposing of the proceeds of the profit-sharing fund. Accordingly, we cannot say that this award was clearly erroneous.

The principal assets of these spouses were interests in the Behm Family Companies: Behm's Propane, Behm's LP, Behm's Dakota Propane Sub, Sunbehm Gas, Power Fuels, Prairie Energy, Behm's TBA, Behm's Family Corporation, and Deka Minerals. For many years, Roger's parents had made equivalent annual gifts of these interests to the "family units" of each of their 10 children. The values of the one-tenth interests held by the "family unit" of Roger and Frances are not disputed. The

trial court divided these interests equally between Roger and Frances.

The dispute here centered on the part of these interests still held by the estates of Neiman Behm, Roger's father who died in 1981, and of Dorothy Behm, Roger's mother who died in 1982. Since federal estate taxes are being paid by the estates over a period of 15 years, these interests continue to be held in the estates, undistributed and subject to the estate tax lien. Roger's allocable one-tenth share of these interests still held by the estates was valued at $254,000.

Roger argued that it was error for the trial court to treat this undistributed inheritance as a marital asset and to use it in equally dividing the interests in the Behm Family Companies between Roger and Frances. Roger argued that "[a]lthough a portion of the assets must be made available to Frances to allow her to maintain her life style, it is not appropriate to award such a considerable amount of the property when a lesser amount would permit her to maintain her current standard of living following rehabilitation." Thus, Roger's position is that Frances received "enough" from equal division of the rest of their property, so that this $254,000 of inherited interests should be set aside solely to him.

In making a near equal division of property, including equal division of all interests in the Behm Family Companies, the trial court reasoned:

"To support my decision, and the only real issue in the lawsuit, which was the distribution of property, the Court finds that the parties were married about 20 years ago when each were the age of 21 years. In that marriage they had three children, two remain minors under the age of eighteen. Each of the parties are in good health. Each have about the same education. It is a typical story of a young couple starting out with nothing, helping each other with their education and contributing to the support by working out of the home. As far as we know, it was a good marriage, at least until about 1970 when the parties moved back to Minot and Roger was employed in the

Behm Family Enterprises. In about the mid 1970's Roger began carrying on liasons with other women outside the marriage and Fran suffered her first experience of physical abuse from Roger. Counseling was tried but it proved to be unsuccessful. For about the next eight to ten years Roger continued his extranonmarital [sic] affairs with other women and used, at times, marital assets to fulfill those activities spending a lot of unnecessary time away from home. Such irreconcilable differences arose between the parties that it destroyed the legitimate object of the marriage and Roger, not Frances, filed for divorce.

"The Behm Family Corporate Stock was given the net value during trial of $11,-788,000.00. The bulk of this stock was gifted by the parents of Roger, Nieman and Dorothy Behm, prior to their deaths to the ten family units which consisted of their ten children and their spouses. In addition, the Behm parents also gave considerable gifts to their grandchildren of such stock. The balance of the stock remaining in probate of the two estates will be distributed to the ten children after the Federal Estate Taxes have been paid. Evidence reveals that Roger's parents treated Frances like another daughter and even counseled her in her marital problems with Roger. Gifts of the stock were made to the two of them as joint tenants. Only later, at the request of Roger, with the understanding it was for business purposes only, the stock was transferred into the name of Roger. ... Indications now are that the stock will be sold as soon as feasibly possible."

Inherited property can be divided between spouses to make an equitable division of property. *Winter v. Winter,* 338 N.W.2d 819 (N.D.1983). While we have affirmed distribution of the bulk of inherited property to the inheriting spouse where the marriages were shorter and without children, (*see VanRosendale v. VanRosendale,* 342 N.W.2d 209 (N.D.1983) and *Dick v. Dick,* 414 N.W.2d 288 (N.D.1987)), we have also required division of inherited property to make a fair and equitable distribution when circumstances called for it.

In *Anderson v. Anderson,* 390 N.W.2d 554 (N.D.1986), we directed that a substantial part of inherited property be set aside to a homemaker ending a seventeen-year marriage with three minor children, where there was little other property and significant disparity in earning power. Also, "[w]hile a property division need not be equal in order to be equitable, any substantial inequality must be explainable." *Anderson v. Anderson, supra* at 556. Generally, if evidence in the record supports the trial court's property division, it is not clearly erroneous and we do not disturb the division. *Erickson v. Erickson,* 384 N.W.2d 659 (N.D.1986).

Frances stresses years of marital misconduct, physical abuse, and financial misconduct. Each of these factors can play a part in a trial court's consideration of a fair and equitable division under the *Ruff–Fischer* guidelines.

 The trial court found marital misconduct. While some members of this court minimize that consideration as a factor in property distribution unless it also involves economic misconduct, *see Erickson v. Erickson, supra,* (Justices Levine and Meschke, concurring), it remains a factor for the trial court to take into proper account. Here, there was also evidence and a finding that, "at times," Roger misused marital assets in repeated adulterous episodes.

More disturbing was the evidence and finding of physical abuse of Frances by Roger. In addition, there was evidence that, after his separation from employment with the Behm Family Companies and without Frances' concurrence, he invested substantial family savings in new businesses that were still losing money at the time of the divorce.

There were no other savings or liquid investments of this 20–year marriage. Virtually all other business and income-producing property was set aside to Roger. The record does not indicate that there have been any dividends from the Behm Family Companies or that any are expected in the foreseeable future, unless the enterprises are sold. Frances signed personal guaranties, along with Roger and members of the other nine "family units," of large amounts of indebtedness of the Behm Family Companies.

Frances' contributions to their family, and to their "family unit," enabled Roger to directly participate in making the Behm Family Companies successful. A homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution of a marriage. *See Briese v. Briese,* 325 N.W.2d 245, 247 (N.D.1982).

We conclude that the equal division of the interests in Behm Family Companies was not clearly erroneous.

Accordingly, we affirm.

ERICKSTAD, C.J., and LEVINE and VANDE WALLE, JJ., concur.

GIERKE, J., concurs in the result.