Marion E. **WALD**, Plaintiff and Appellant,

v.

Roger J. **WALD**, Defendant and Appellee.

Civil No. 960031.

Supreme Court of North Dakota.

Dec. 4, 1996.

Carol Ronning Kapsner, of Kapsner & Kapsner, Bismarck, for plaintiff and appellant.

Orell D. Schmitz, of Schmitz, Moench & Schmidt, Bismarck, for defendant and appellee. Appearance by appellee Roger J. Wald.

SANDSTROM, Justice.

Marion E. Wald appeals from a judgment granting her a divorce from Roger J. Wald, distributing their marital property, and awarding her temporary spousal support. We affirm in part, but we conclude the trial court's method of distributing a major item of marital property and failure to award Marion Wald adequate, permanent spousal support are clearly erroneous, and we reverse and remand for further proceedings.

I

Marion and Roger Wald married in Bismarck in 1968 and had two children who, at

the time of this divorce proceeding, were adults. The couple was divorced earlier, in 1981, but remarried each other in 1983. They separated in July 1993, after Marion Wald discovered Roger Wald was having an affair with another woman.

At the time of trial, Marion Wald was 47 years old and employed as a secretary for Dakota Fence Company. She had worked there for 15 years and was earning $9.25 per hour, but received no employer-paid health or life insurance. She is regularly laid off during the early months of each year and receives unemployment compensation during those times. She has a high school education and never desired any formal post-high school education. Between 1992 and 1994, her annual income ranged from $16,492.18 to $18,733.74 in wages and unemployment compensation.

In 1986, Marion Wald was diagnosed with breast cancer and had a lumpectomy and 36 radiation treatments. In June 1986, she also had open heart surgery to replace an aortic valve. In July 1986, because of blocked arteries in her legs, she had an aortic femoral bypass. In 1990, her breast cancer reappeared and she had a mastectomy. Although she has not had cancer problems since the mastectomy, she has recently been experiencing soreness in her legs when she walks and believes her legs are "blocking up" again. Because of her medical history, she purchases her insurance through the program of the Comprehensive Health Association of North Dakota with Blue Cross Blue Shield.

At the time of trial, Roger Wald was 48 years old and was self employed as an independent contractor who sells business forms for American Business Forms (ABF). He and Marion Wald were joint owners of 30 shares of stock in Ames Computer Forms, Inc. (Ames), a manufacturer of business forms that Roger Wald sells through ABF. Roger Wald is employed by and on the board of directors of Ames, a closely held corporation with ten principal shareholders. The 30 shares of stock represent approximately 8.5 percent of the company's outstanding shares. Roger Wald has a bachelor of science degree with a major in physical education and a minor in industrial arts. Between 1992 and 1994, his annual net income from ABF and Ames ranged from $76,708.54 to $81,677.65.

In 1993, Roger Wald suffered a heart attack. He has high cholesterol and receives checkups and stress tests every six months. Roger Wald testified he feels well and believes he has recovered from the heart attack.

The parties' major assets were their home in Bismarck, which the trial court valued at $120,000, but which was also subject to two mortgages totaling $75,000, and their jointly-owned Ames stock, which the trial court valued at $82,080. The trial court found the net value of the marital estate, including IRAs, mutual funds, debentures, profit sharing accounts, annuities, and passbook savings accounts, was $283,919. The trial court awarded Marion Wald property that had a net value of $162,310, and awarded Roger Wald property that had a net value of $121,609. In addition, the trial court awarded Marion Wald a vehicle valued at $15,000 and awarded Roger Wald a vehicle valued at $26,000 "together with any indebtedness." The trial court made no specific findings on the possible debt remaining, but noted the evidence "is quite unclear as to the indebtedness of these vehicles."

The trial court awarded Marion Wald the parties' home subject to the two mortgages, and awarded Roger Wald sole ownership of their jointly-owned Ames stock. However, Roger Wald was ordered to pay Marion Wald one-half of the stock value, $41,040, over a seven-year period at seven percent interest, resulting in a monthly payment to Marion Wald of $619.40. The liquid assets were essentially split evenly between them. Because of the "great disparity between the parties' income, earning capacity, and future needs," the trial court also ordered Roger Wald to pay Marion Wald $600 per month in spousal support for 10 years, or until either party dies or Marion Wald remarries. Furthermore, because Roger Wald "admitted adultery," the trial court found the " 'fault' for the breakup of this marriage rests with the husband."

The district court had jurisdiction of this divorce action under N.D.C.C. § 27–05–06. Marion Wald's appeal from the judgment is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. Art. VI, § 6, and N.D.C.C. § 28–27–01.

## II

The trial court has discretion, after hearing the testimony and applying the *Ruff–Fischer* guidelines, *see Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), to equitably distribute marital property based on the facts and circumstances in each case. *Zander v. Zander*, 470 N.W.2d 603, 605 (N.D. 1991); N.D.C.C. § 14–05–24. A property division need not be equal to be equitable, but a substantial disparity should be explained. *Spooner v. Spooner*, 471 N.W.2d 487, 491 (N.D.1991). A trial court's findings on matters of property division will not be set aside on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a), or they are induced by an erroneous view of the law. *Heley v. Heley*, 506 N.W.2d 715, 718 (N.D.1993).

Marion Wald challenges several aspects of the trial court's division of marital property.

## A

She asserts the trial court's award to her of the parties' home is clearly erroneous because its value is substantially less than the net value found by the court and because it amounts to a distribution of a non-income producing asset to the spouse with the least earning potential. She contends the court should have ordered the home sold and the net proceeds divided equally between the parties after payment of the two mortgages encumbering the property.

Although the parties agreed the home had a value of $120,000 subject to mortgages totaling $75,000, Marion Wald asserts the actual net value of the home is substantially less than the $45,000 net value assigned to it by the trial court because she will incur adverse tax consequences when the home is sold. This Court has recognized matters of taxation are part of the pragmatic effects of property division and spousal support and should be considered by the trial court in making those findings. *See, e.g., Kostelecky v. Kostelecky*, 537 N.W.2d 551, 554 (N.D. 1995); *Neubauer v. Neubauer*, 524 N.W.2d 593, 595 (N.D.1994). But a trial court should do so only "when it is properly informed, ..." *Stoelting v. Stoelting*, 412 N.W.2d 861, 865 (N.D.1987). This Court said in *Kaiser v. Kaiser*, 474 N.W.2d 63, 69–70 (N.D.1991):

"[A] trial court in a divorce action should consider potential taxes in valuing marital assets only if (1) the recognition of a tax liability is required by the dissolution or will occur within a short time; (2) the court need not speculate about a party's future dealing with the asset; (3) the court need not speculate about possible future tax consequences; and (4) the tax liability can be reasonably predicted."

In this case, even if the trial court was convinced Marion Wald was going to sell the home, she presented no evidence to support her claim she would suffer an adverse tax consequence upon its sale. Without any evidence Marion Wald would receive a taxable gain on the sale of the property, or if so, the amount of gain, the trial court's finding $45,-000 to be the net value of the home is not clearly erroneous.

Although Marion Wald complains the home is a nonproducing asset, she did receive more than one-half, approximately 57 percent, of the parties' marital property. Most of those assets are liquid. We cannot say the trial court's award of the home to Marion Wald is clearly erroneous.

## B

Marion Wald asserts the distribution of the 30 shares of Ames stock to Roger Wald was clearly erroneous because the stock was substantially undervalued by the trial court and because more equitable methods of distributing the stock existed.

Ames' corporate accountant testified the book value of the stock was $81,930. The accountant explained book value is arrived at by subtracting a corporation's liabilities from its assets and then dividing the result by the number of outstanding shares of stock. Use of this method resulted in a per share value of $2,731. The accountant testi-

fied the fair market value of the parties' 30 shares of Ames stock was "indeterminable." Although acknowledging book value and fair market value are not the same, the accountant testified one sale of stock had occurred during the corporation's existence and the corporation paid 80 percent of book value for redeeming those shares. The accountant further testified because the 30 shares constitute only 8.5 percent of the stock in the closely held corporation, Roger Wald would have difficulty receiving book value if he sold the shares.

Marion Wald presented no evidence to dispute the corporate accountant's testimony about the book value of the stock. Nor did she attempt to value the stock by other recognized accounting methods. Instead, she proposed taking the average income distributed from the Ames stock during 1992 and 1993, applying an annual percentage yield of 6.60 percent being paid by a local bank on certificates of deposit, and computing the amount of money needed to have been on deposit at that rate to earn the average distributed by Ames for those years. Because Marion Wald determined it would take an investment of $225,441.91 to yield income comparable to that yielded by Ames, she claimed this was the actual value of the stock.

In *Fisher v. Fisher*, 546 N.W.2d 354, 357–358 (N.D.1996), we recently noted the difficulty in valuing minority shares in a closely held corporation:

"The valuation of minority shares in a close corporation ... is problematic at best. One school of thought insists minority shares in a close corporation have small value. *See Estate of Weber*, 86 Wis.2d 151, 271 N.W.2d 657, 662 (1978) ('Minority shares in a close corporation are frequently of little value because of the lack of effective voice in the policies of the corporation on the part of the minority.'). Even in the rare situations in which minority shareholders in a close corporation are entitled to sell their shares for a 'fair value' to the majority, *see* N.D.C.C. § 10–19.1–87, the process of determining this value is a complicated one. *See Brown v. Hedahl's–Q B & R, Inc.*, 185 N.W.2d 249 (N.D.1971)

(court applied asset value, market value, and investment value methods of determining minority share value, and gave appropriate weight to each, in calculating fair value of dissenting shareholders' shares); *see also* Charles W. Murdock, *The Evolution of Effective Remedies for Minority Shareholders and Its Impact Upon Valuation of Minority Shares*, 65 Notre Dame L.Rev. 425, 473 (1990) ... ('[V]aluation is an inexact science.')."

■ Marion Wald asserts although this Court has accepted an adjusted book value method of valuing a business, *see Davis v. Davis*, 458 N.W.2d 309, 315 (N.D.1990), it has not accepted the unadjusted book value method of valuation used in this case. However, Marion Wald has cited no authority approving her method of valuing the stock based on certificate of deposit rates and the amount needed to generate income comparable to that yielded by the stock. Under these circumstances, we cannot say the trial court erred in rejecting Marion Wald's novel, and somewhat bizarre, method of valuing the shares of Ames stock. Marital property valuations within the range of the evidence are not clearly erroneous. *Hendrickson v. Hendrickson*, 553 N.W.2d 215, 219 (N.D.1996). The trial court's valuation of the stock at $82,080 is within the range of the evidence and is not clearly erroneous.

■ Although not seeking a division of the shares of stock between them, Marion Wald claims the more equitable method of distributing this marital property would be to require Roger Wald to pay her one-half of all distributions he receives from Ames for as long as he continues to own the stock and work for the company. According to her, this method would preserve the stock's value as an income-producing asset for both parties.

This Court has acknowledged the authority of trial courts to structure an appropriate form of payment in lieu of dividing shares of stock. *See, e.g., Klitzke v. Klitzke*, 308 N.W.2d 385, 388 (N.D.1981). But Marion Wald's argument ignores that she would in effect be receiving Roger Wald's salary from Ames as part of her property distribution. Roger originally received dividends from

Ames as compensation for his work as its employee and as profits from the investment. The distribution was later changed to the form of wages based on the corporate accountant's advice. We decline to sanction a method that seeks as an unmodifiable property distribution 50 percent of a spouse's salary from employment. We conclude the trial court did not err in refusing to award Marion Wald 50 percent of the distributions from the Ames stock as part of the property distribution.

### C

If we were to view the value of the assets awarded to each party purely in a vacuum, we would have no difficulty concluding the division of marital property was not clearly erroneous. *See Heley* at 719. But we cannot consider the property distribution alone, without considering other factors.

■ While forcing an immediate payment of a monetary property distribution is not favored, we nevertheless encourage the term for payment of the debt to be as short as possible without imposing a serious hardship on the party responsible to pay the debt. *See Heggen v. Heggen,* 541 N.W.2d 463, 465 (N.D.1996). In this case, the seven-year time span given Roger Wald for paying off Marion Wald's $41,040 share of the Ames stock is excessive.

As the trial court noted, Roger Wald has a far greater earning capacity than Marion Wald. He has the ability to pay off the $41,040 debt in a shorter time period than seven years. Moreover, the trial court found Roger Wald's "admitted adultery" caused the breakup of this marriage. A majority of this Court has ruled non-economic fault may be considered by the trial court in marital property awards. *See, e.g., Bell v. Bell,* 540 N.W.2d 602, 604–605 (N.D.1995). The sooner Marion Wald receives her share of the Ames stock, a major marital asset of the parties, the sooner she can invest it toward her future needs.

Considering Roger Wald's ability to pay and Marion Wald's needs, we conclude the trial court's allowance of seven years to make the payments is clearly erroneous. We re-verse and remand for the trial court to set a shorter period of time for Roger Wald's payment of the $41,040.

### III

■ Marion Wald asserts the trial court's spousal support award of only $600 per month for ten years or until either party dies or she remarries is clearly erroneous. She claims permanent spousal support in the amount of $1,500 per month is more appropriate.

■ A trial court's findings on spousal support will not be reversed unless they are clearly erroneous. *Beals v. Beals,* 517 N.W.2d 413, 415–416 (N.D.1994). Questions of property distribution and spousal support should be examined and dealt with together, especially where, as here, there is a large difference in earning power between the spouses. *See Welder v. Welder,* 520 N.W.2d 813, 819 (N.D.1994). As we explained in *Gronland v. Gronland,* 527 N.W.2d 250, 253 (N.D.1995):

> "Continuing a standard of living is a valid support consideration in a long-term marriage, as is balancing the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard of living. *Wahlberg v. Wahlberg,* 479 N.W.2d 143 (N.D.1992). Rehabilitative spousal support is preferred to give a spouse an opportunity to become self-supporting, but support may be required indefinitely to maintain a spouse who cannot be adequately restored to independent economic status. *LaVoi v. LaVoi,* 505 N.W.2d 384, 386 (N.D.1993). Permanent support is not limited to a spouse who is incapable of any rehabilitation, but may be awarded to a spouse incapable of adequate rehabilitation or self-support. *Wiege v. Wiege,* 518 N.W.2d [708, 711 (N.D.1994) ]. In awarding spousal support, the court should consider the needs of the spouse disadvantaged by the divorce as well as the supporting spouse's needs and ability to pay. *Sateren v. Sateren,* 488 N.W.2d 631, 634 (N.D.1992)."

■ The parties were married for more than 20 years. Roger Wald earns several times more each year than does Marion

Wald. Marion Wald suffers from serious health problems. Given her age and education, it is highly unlikely she will ever earn as much as Roger Wald earns. Indeed, except for small increases in her hourly wages, she is probably earning as much currently as she is capable of earning. Permanent spousal support is appropriate when one party is incapable of rehabilitation beyond her current earning capacity. *See Routledge v. Routledge,* 377 N.W.2d 542, 545 (N.D.1985).

We recognize a court must balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living. *See Wahlberg v. Wahlberg,* 479 N.W.2d 143, 145 (N.D.1992). However, given the substantial disparity in the parties' earning power, the likely inability of Marion Wald to greatly increase her earning capacity, her serious ongoing health problems, and the trial court's award of the major income producing marital asset to Roger Wald, we conclude the trial court's award of only temporary spousal support in the amount of $600 is clearly erroneous. More adequate, permanent spousal support is called for in this case.

■ But we do not agree with Marion Wald that we should set spousal support at $1,500 per month. An award of spousal support must be made in light of the supporting spouse's needs and ability to pay, and maintaining relative standards of living. *See Weir v. Weir,* 374 N.W.2d 858, 864–865 (N.D. 1985); *Bagan v. Bagan,* 382 N.W.2d 645, 646 (N.D.1986).

We conclude the trial court's award of $600 per month in spousal support is so inadequate as to be clearly erroneous, and its refusal to make the award permanent subject to either party's death or her remarriage, is also clearly erroneous.

### IV

We affirm the trial court's findings on the value of the marital home and the value and disposition of the Ames stock. We reverse the judgment and remand for the trial court to consider a shorter period for Roger Wald to pay off Marion Wald's share of the Ames stock, and we remand for the trial court to set a more adequate amount of permanent spousal support considering needs, ability to pay, and relative standards of living.

VANDE WALLE, C.J., and NEUMANN, MESCHKE and MARING, JJ., concur.