Filed 9/30/97 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

            1997 ND 192               

Jack O. Glander, Plaintiff and Appellant

v.

Janet B. Glander,      Defendant and Appellee

Civil No. 970053

Appeal from the District Court for Rolette County, Northeast Judicial District, the Honorable Lester Ketterling, Judge.

AFFIRMED.

Opinion of the Court by Meschke, Justice.

Maureen White Eagle of Foughty, Christianson, White Eagle & Berg, 411 Fourth Avenue, P.O. Box 902, Devils Lake, ND 58301, for plaintiff and appellant.  Submitted on brief.

J. Philip Johnson of Wold Johnson, P.C., 400 Gate City Building, P.O. Box 1680, Fargo, ND 58107-1680, for defendant and appellee.  Submitted on brief.

Glander v. Glander

Civil No. 970053

MESCHKE, Justice.

[¶1] Jack Glander appealed a divorce decree dividing the marital estate equally and ordering spousal support for Janet Glander after a forty year marriage.  We affirm.

[¶2] When Jack and Janet married in 1956, they had just graduated from the University of North Dakota.  After his next four years in the Air Force, Jack attended dental school at the University of Minnesota, graduating in 1965.  Since early 1966, they have lived in Rolette, North Dakota, where Jack still practices dentistry.  Janet worked outside the home only the few early months while they lived in Grand Forks.  In Rolette, Janet raised their three daughters who are now adults and, by using her musical talents, engaged in charitable and religious activities in the community.

[¶3] Jack sued for divorce in 1995, moving out of their home on Christmas eve.  To a great extent, they had lived separately within their home for over ten years, Janet on the main floor and Jack downstairs.  They agreed their marriage had been unhappy and was broken, and Janet did not resist a divorce.

[¶4] At trial, Jack and Janet stipulated equal division of vehicles, household goods, and most property, including:  1) upon Jack’s retirement, proceeds from the sale of the dental equipment and their joint one-third interest in the clinic building would be split equally; 2) the value of their marital home was $51,000; 3) the value of an investment account at A.G. Edwards & Sons was $14,745.78 on July 1, 1996; and 4), on the same date, the value of an investment account at Edward Jones & Company was $29,108.56.  Their agreement left in dispute what to do with the home, distribution of the investment accounts, and the amount of spousal support for Janet.

[¶5] The trial court decreed a divorce for irreconcilable differences and accepted their partial settlement.  The court ordered an equal division of both investment accounts, and made them equal owners of the home while allowing Janet to continue to reside there.  While Janet remained in the house, the court directed Jack should receive a credit of $125 monthly on his support obligation so that, if Janet moved out before Jack retired, his support obligation would increase by $125 monthly.  The court ordered Jack pay Janet $1,550.00 monthly support until his retirement, based on half of his current net income but deducting the $125 monthly credit for Janet’s use of the home.  When Jack retired, the court directed, his support payment would be half the difference between his Social Security benefits received and those Janet then received.  Jack testified that, if he retired at age 65, he would expect to receive $1,175 monthly in Social Security benefits, and Janet would receive a direct benefit on his account of $588 monthly.

[¶6] In this appeal, Jack contests the handling of the home, distribution of their investments, and the amount of spousal support.  He contends that the home should have been sold and the proceeds divided currently, that he should have received all of the Edward Jones & Company investment account, and that his support obligation equivalent to fifty percent of his current net income is excessive. 

[¶7] When, as here, the financial dispositions in a divorce are contested, the courts must consider the division of property and amount of spousal support together.  As we explained in 
Pfliger v. Pfliger
, 461 N.W.2d 432, 436 (N.D. 1990):

A difference in earning power is a proper factor both for dividing property and for prescribing spousal support.  Sources of income, in addition to earnings, are important in setting the amount of support for a disadvantaged spouse.  For these reasons, property division and spousal support often need to be examined and dealt with together.

(citation omitted).  
See
 
also
 
Heley v. Heley
, 506 N.W.2d 715, 718 (N.D. 1993).  This case illustrates the relationship between property division and spousal support.

[¶8] In a divorce, a trial court must make an equitable distribution of the marital property.  NDCC 14-05-24.  The purpose is to “equitably divide property based on the circumstances of the case.”  
van Oosting v. van Oosting
, 521 N.W.2d 93, 96 (N.D. 1994)(citing 
Blowers v. Blowers
, 377 N.W.2d 127, 129 (N.D. 1985)).  The trial court must consider all relevant factors under the 
Ruff-

Fischer
 guidelines.  
See
 
Ruff v. Ruff
, 52 N.W.2d 107 (N.D. 1952); 
Fischer v. Fischer
, 139 N.W.2d 845 (N.D. 1966).  However, as 
Heley
, 506 N.W.2d at 718, explained, the trial court has discretion in applying the guidelines to the facts under NDRCivP 52(a), and the division of property is a finding of fact that we will not set aside on review unless clearly erroneous.  

[¶9] Jack argues the immediate sale of their home would have made more of their assets available for current distribution.  He argues that allowing Janet to stay in the home “deprives [him] of any benefit of the property.”  However, the trial court reasonably recognized Jack’s continuing equity in the home by crediting his support obligation with $125 monthly while she lives there.

[¶10] Jack disputes the equal division of both investment accounts, insisting that Janet should not share in the Edward Jones & Company account because it represented funds inherited from his mother.  “
[A]ll
 of the real and personal property accumulated by the parties . . . , regardless of the source” must be included in the marital estate to be divided by the trial court.  
Gaulrapp v. Gaulrapp
, 510 N.W.2d 620, 621 (N.D. 1994)(emphasis in original).  However, the origin of the property may be considered in making an equitable distribution.  
Id.
; 
Winter v. Winter
, 338 N.W.2d 819, 822 (N.D. 1983).  As 
Heley
, 506 N.W.2d at 718, reflects, to be equitable, the division need not be exactly equal but any substantial disparity must be satisfactorily explained. 

[¶11] “Inherited property can be divided between spouses to make an equitable division of property.”  
Behm v. Behm
, 427 N.W.2d 332, 336 (N.D. 1988).   In 
van Oosting v. van Oosting
, this court authorized the division of inherited property to “make [a] division equitable.”   521 N.W.2d at 97.  In general, a lengthy marriage supports an equal division of all marital assets.ned:

All of the assets accumulated have been primarily from the efforts of both parties.  Each party has received some inheritance.  Some of the inheritances [of each] have been used for family purposes.

We conclude the trial court did not err in dividing both investment accounts equally and in delaying liquidation of the home equity while Janet lived there.  

[¶12] The trial court also reasoned:

This has been a marriage of long duration.  The assets were accumulated during the marriage.  There is a need to provide support to [Janet] because of her disadvantaged status. [Jack] is the best one to provide support.  The division of the property and income must be on a nearly equal basis.

In a divorce, the trial court is authorized to “compel either of the parties . . . to make such suitable allowances to the other party for support during life or for a shorter period as to the court may seem just, having regard to the circumstances of the parties respectively.”  NDCC 14-05-24.  As we explained in 
Beals v. Beals
, 517 N.W.2d 413, 415-16 (N.D. 1994), findings of fact about spousal support will not be set aside unless clearly erroneous.

[¶13] During virtually their entire forty-year marriage, Jack had been the sole family breadwinner.  As 
Heley
, 506 N.W.2d at 720, explained, when rehabilitation of a disadvantaged spouse is not possible, spousal support may be needed indefinitely to maintain the disadvantaged one.

[¶14] At best, Janet’s half of the investment accounts would contribute less than a $100 monthly to her current income.  While Janet had a music and education degree, she had significant problems that obstructed her rehabilitation after this divorce.  Her poor health, lack of work experience, and age at sixty-two made it virtually impossible for her to contribute to her own support.  The trial court explained:

[Janet] has had medical problems since her youth.  She has arthritis which is debilitating causing her to use a cane or a wheel chair at times.  This is a progressive disease which at best may be stabilized.  The medical condition would likely prevent her from having full-time employment. Considering her age, medical condition, and almost no experience on the open job market, it is doubtful that she would obtain any employment other than menial work on a limited basis.

This reasonably summarized why Janet was seriously disadvantaged and would need substantial support indefinitely. 

[¶15] Before trial, to obtain an order for $1,115 monthly support temporarily, Janet filed a financial affidavit showing she would need that amount monthly after her investment income of $60 monthly, for food ($300), household utilities ($250), auto maintenance ($100), medical insurance ($150), drugs ($175), and miscellaneous expenses ($200).  At trial, she testified that she had been without health insurance coverage for many years and had recently learned she would have to pay $370 monthly for medical insurance that would cover her preexisting medical conditions.  She had also realized that she would need another $100 monthly for fuel and taxes to maintain the home.  It is clear the trial court believed her minimum needs would be near $1,600 monthly.  Computing half of Jack’s net income and deducting his $125 credit for Janet’s use of the home, the trial court ordered Jack to pay Janet $1,550 monthly, and also ordered that Jack’s support obligation after he retired should be similarly computed to equalize their lesser income from social security.

[¶16] We have not before considered equalization of income between divorcing spouses.  Some jurisdictions flatly reject any equalization of income between former spouses through spousal support.  
See
 
Kennedy v. Kennedy
, 622 So.2d 1033, 1034 (Fla.App. 5th Dist. 1993); 
Reichert v. Reichert
, 246 Neb. 31, 516 N.W.2d 600, 607 (1994); 
In the Matter of Marriage of Leslie
, 130 Or.App. 327, 881 P.2d 159, 162 (1994); 
Stone v. Stone
, 488 S.E.2d 15, 18 (W.Va.App. 1997)(“To the extent that the circuit court found alimony could not be awarded on the basis of equalizing the income of the parties, we affirm.”).  

[¶17] When, however, there will be a substantial disparity between the parting spouses’ incomes that cannot be readily adjusted by property division or rehabilitativeequalizing post-divorce income.  
See
 
Guiel v. Guiel
, 682 A.2d 957, 958 (Vt. 1996)(lengthy marriage, age, poor health, and inability to find full-time work justified “permanent equalization of incomes” for disadvantaged spouse); 
Burt v. Burt
, 799 P.2d 1166, 1170 (Utah App. 1990)(but cautioning “alimony may not be automatically awarded whenever there is disparity between the parties’ incomes”); 
Kennedy v. Kennedy
, 145 Wis.2d 219, 426 N.W.2d 85, 87 (App. 1988)(“It is appropriate in a marriage of many years to consider an equal division of total income as a starting point in determining maintenance.”); 
Stearns v. Stearns
, 284 S.C. 459, 327 S.E.2d 343, 345 (1985)(alimony ordered “renders the monthly income of each party approximately equal, a result which is fair and proper under the evidence in the case”); 
R.E.T. v. A.L.T.
, 410 A.2d 166, 167 (Del. 1979)(affirming “unique” findings “that throughout the marriage the parties had ‘engaged in a true partnership in every sense of the word’” and “that their present and future spendable incomes should be equalized to the extent possible.”).

[¶18] While arbitrary equalization of income between parting spouses would be questionable, we conclude the circumstances here justified it.  In determining support, a court must “balance the burden created by a divorce when it is impossible to maintain two households at the pre-divorce standard of living.”  
Wald v. Wald
, 556 N.W.2d 291, 297 (N.D. 1996) (citing 
Wahlberg v. Wahlberg
, 479 N.W.2d 143, 145 (N.D. 1992)).  We are not convinced the amount of support ordered here overburdens Jack’s ability to pay or exceeds what Janet needs.  We conclude the trial court satisfactorily explained why the amount of support that resulted in equalizing their post-divorce incomes was appropriate here. 

[¶19] We affirm the decreed property division and the spousal support.

[¶
20]Herbert L. Meschke

Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Gerald W. VandeWalle, C.J.