1998 ND 83

**Dorothy YOUNG, Plaintiff and Appellant,**

v.

**Gene YOUNG, Defendant and Appellee.**

Civil No. 970251.

Supreme Court of North Dakota.

April 28, 1998.

Rehearing Denied May 20, 1998.

James J. Coles of Snyder Coles Lawyers, Bismarck, for plaintiff and appellant.

James A. Reisnour of Mackenzie & Reisnour, Jamestown, for defendant and appellee.

MARING, Justice.

[¶ 1] Dorothy Young appeals from a judgment dissolving her marriage with Gene Young, dividing the marital property, and awarding spousal support. We hold the trial court's award of spousal support is not clearly erroneous and the trial court did not abuse its discretion in denying Dorothy's request for fees and costs. We further hold the trial court's valuation of the marital property is not clearly erroneous, but that its division of the marital property is clearly erroneous. We, therefore, affirm in part, reverse in part and remand.

[¶ 2] The Youngs were married in 1975. This was a second marriage for both of them and, although they had no children of this marriage, Dorothy's daughter from her previous marriage and Gene's son from his previous marriage lived with them until their graduation from high school. Their family resided on a farm near Edgeley where Gene made a living as a farmer and rancher.

[¶ 3] The parties separated in November 1995. Dorothy moved to Bismarck, accepted employment as a nurse's assistant, and filed for divorce. After a hearing, the trial court granted a divorce on the grounds of irreconcilable differences, divided the marital property, and awarded Dorothy spousal support of $150 per month for five years.

[¶ 4] Dorothy asserts the court erred in valuing the marital real estate. The trial court's valuation of property is a finding of fact which will be reversed on appeal only if it is clearly erroneous. *Kluck v. Kluck*, 1997 ND 41, ¶ 25, 561 N.W.2d 263. When the trial court's valuation is within the range of evidence and we are not left with a definite

and firm conviction the court has made a mistake, we will not set it aside. *Hendrickson v. Hendrickson,* 553 N.W.2d 215, 219–220 (N.D.1996).

[¶ 5] Gene testified the real estate, mostly farmland, had a total value of $235,428. Dorothy hired an expert appraiser who valued the real estate at $288,260. The trial court found the value of the property was $260,000. Dorothy complains the trial court gave equal weight to Gene's testimony and the testimony of her expert appraiser.

[¶ 6] Ordinarily, the owner of real property is presumed to have special knowledge of its value and may testify thereto without any further qualification. *Anderson v. Anderson,* 368 N.W.2d 566, 569 (N.D.1985). The trial court is entitled to weigh and evaluate expert testimony, and the court does not have to accept expert opinion even if it is undisputed. *Matter of Estate of Aune,* 478 N.W.2d 561, 564 (N.D.1991). The trial court can best evaluate testimony because it observes the demeanor and credibility of the witnesses, and we do not substitute our judgment for that of the trial court when reasonable evidence supports the findings. *Fenske v. Fenske,* 542 N.W.2d 98, 102 (N.D.1996). The trial court's valuation was within the range of the evidence, and we are not left with a firm and definite conviction the trial court made a mistake in valuing the real estate.

[¶ 7] Dorothy argues the court erred in awarding her spousal support of only $150 per month for five years. The court, within its discretion, can award either party spousal support under N.D.C.C. § 14–05–24. An award of spousal support must be made in light of the disadvantaged spouse's needs and the supporting spouse's needs and ability to pay. *Mahoney v. Mahoney,* 1997 ND 149, ¶ 28, 567 N.W.2d 206. Determinations relevant to spousal support awards are findings of fact which will not be disturbed on appeal unless clearly erroneous. *Beals v. Beals,* 517 N.W.2d 413, 416 (N.D.1994). The trial court found the parties have approximately equal annual incomes, but Dorothy "has need of support to assist her due to her reduced vision until she retires." Dorothy provides no analysis or citation of authority,

and she makes no suggestion as to what would be a more appropriate spousal support award. We are not left with a firm and definite conviction the trial court made a mistake in its award of spousal support.

[¶ 8] Dorothy argues the trial court erred in denying her request for attorney fees, expert witness fees, and costs. An award of expert witness fees and costs is within the sound discretion of the trial court and will not be disturbed on appeal unless an abuse of discretion is shown. N.D.C.C. §§ 28–26–06(5) and 28–26–10; *Patterson v. Hutchens,* 529 N.W.2d 561 (N.D.1995). An award of attorney fees in a divorce action under N.D.C.C. § 14–05–23, is also within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. *Bagan v. Bagan,* 382 N.W.2d 645 (N.D.1986); *Heller v. Heller,* 367 N.W.2d 179 (N.D.1985). The trial court found these parties have similar annual incomes, but awarded Dorothy $150 per month rehabilitative spousal support because she has a vision disability and cannot retire for three years. Under these circumstances, we are not convinced the trial court abused its discretion in refusing to award Dorothy witness fees, costs, or attorney fees.

[¶ 9] Dorothy asserts the trial court's division of property is clearly erroneous. In dividing the property, the trial court first determined Gene brought into the marriage a farmhouse, machinery, livestock, life insurance policies, cash, crops, and 560 acres of farmland, with a current net value of $140,005. The court also determined Dorothy brought into the marriage a checking account, an automobile, and household furnishings, valued at $22,500. The court awarded to each party specific property equivalent to the value of the premarital property that the court determined each had brought into the marriage.

[¶ 10] Section 14–05–24, N.D.C.C., requires the court to make an equitable distribution of the marital estate. *Hendrickson,* 553 N.W.2d at 220. " '[A]ll of the real and personal property accumulated by the parties ..., regardless of the source'

must be included in the marital estate to be divided by the trial court." *Glander v. Glander,* 1997 ND 192, ¶ 10, 569 N.W.2d 262 (quoting *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994) (emphasis in original)). We have repeatedly held "[s]eparate property, whether inherited or otherwise, must initially be included in the marital estate." *Gaulrapp v. Gaulrapp,* 510 N.W.2d 620, 621 (N.D.1994) (citations omitted). *See also Grinaker v. Grinaker,* 553 N.W.2d 204, 208 (N.D.1996); *van Oosting v. van Oosting,* 521 N.W.2d 93, 96 (N.D.1994). We have held a trial court can only apply the *Ruff-Fischer* guidelines *after* all the assets are included in the marital estate. *Gaulrapp,* 510 N.W.2d at 621 (emphasis ours). The origin of the property is only one factor to consider under the *Ruff-Fischer* guidelines, even if the property was acquired before the marriage or inherited. *Winter v. Winter,* 338 N.W.2d 819, 822 (N.D.1983). We have never held that property brought into a marriage or acquired by gift or inheritance by one spouse, be irrevocably set aside to that spouse. *Grinaker,* 553 N.W.2d at 208. As we held in *Gaulrapp,* 510 N.W.2d at 621, the length of the marriage is relevant in the distribution of gifted property as part of the "equitable" division of the marital estate. Also a lengthy marriage, in general, supports an equal division of all marital assets. *Glander,* 1997 ND 192, ¶ 11, 569 N.W.2d 262.

[¶ 11] It is well-settled in our case law a property division does not need to be equal to be equitable, but a substantial disparity must be explained. *See id.* at ¶ 10; *Fisher v. Fisher,* 1997 ND 176, ¶ 15, 568 N.W.2d 728. "A trial court's findings on matters of property division will not be set aside on appeal unless they are clearly erroneous under N.D.R.Civ.P. 52(a), or they are induced by an erroneous view of the law." *Wald v. Wald,* 556 N.W.2d 291, 294 (N.D. 1996) (citation omitted).

[¶ 12] The trial court's Memorandum Opinion, dated May 2, 1997, and incorporated by reference into its findings of fact and conclu-

sions of law, awards certain items of property to Gene as "premarital or akin to premarital property of Gene ... as such" and awards certain items of property to Dorothy "that are akin to premarital property as they are, in a sense, replacements of premarital property" and awards them "as such." It is clear from the trial court's Memorandum Opinion that it never included the "premarital" property in the marital estate. The court initially separates out this property and distributes it and then determines the net value of the marital estate listing its values of the property and the debt. This method of determining the marital estate indicates an erroneous view of the law.

[¶ 13] In addition, the trial court's distribution of "premarital" property results in a substantial disparity of approximately $137,900 in favor of Gene in the property division. The court never explains why it made this distribution. The trial court, therefore, not only erred in its approach to establishing the marital estate, it never offered any satisfactory explanation for the substantial disparity.

[¶ 14] We have held, if our Court can understand the factual basis upon which the trial court reached its conclusions from its findings of fact, we will not remand, but this case requires a remand for a correct application of the law and an adequate explanation of its division of this marital estate. This is especially so, because the trial court's Memorandum Opinion clearly states: "In considering all of the above *Ruff-Fischer* guideline factors, the court comes to the conclusion that *a somewhat equal property distribution is justified.*" (Emphasis ours.) The trial court concludes the total net value of the marital assets is $160,870 and *"[a] perfect division* would yield each party $80,435." (Emphasis ours.) The trial court then proceeds to deduct $10,000 from Dorothy's 50% of the marital estate because of her "adulterous conduct." We thus know the trial court has accounted for Dorothy's fault in the breakup of the marriage by punishing her economically.[1] What we still do not know is

1. Although the issue of whether fault should be considered in the context of an equitable property division was not raised in this case, it should be noted that some members of our Court have

expressed that they would limit consideration of misconduct to economic misconduct. *See Erickson v. Erickson,* 384 N.W.2d 659, 662–63 (N.D. 1986) (Justices Levine and Meschke, concurring);

why, if the court concluded an equal division of the marital assets was equitable, but for the $10,000 adultery deduct, did it award each party their respective premarital property?

[¶ 15] The findings of the trial court point out Dorothy's earnings outside the home went into her own separate account and, seem to infer, she did not equally contribute to the accumulation and preservation of the marital estate. The trial court, however, also found "Dorothy was a homemaker until her daughter graduated from high school and then she began working outside the home." Dorothy testified she maintained the home of the parties, keeping it clean, doing the laundry, and making the meals. She also testified she purchased carpet, a television, curtains and incidental things for their home from her earnings. Gene did not dispute Dorothy's testimony regarding her role as a homemaker. "A homemaker's contributions deserve equivalent recognition in a property distribution upon dissolution of a marriage." *Behm v. Behm*, 427 N.W.2d 332, 337 (N.D.1988). The homemaking services provided by Dorothy to Gene for 20 years enabled him to devote his full time and attention to his farming operation and contributed to the accumulation, appreciation, and preservation of the assets.

[¶ 16] The record also indicates Gene came into the marriage with substantial debt on the land he brought into the marriage of approximately $72,600 (including $3,200 to FMHA, $1,400 to his father, $16,000 to Federal Land Bank, and $52,000 to his ex-wife). This was over one-half of the land's value at the time which was $140,000. All of the payments on this debt were made from marital funds and Dorothy testified she and Gene borrowed $142,000 from Federal Land Bank. to purchase Gene's parents' farm for $60,000 and to pay off the $52,000 mortgage on the land owed to his first wife. The trial court specifically found "Gene and Dorothy paid on that note during all of the time they were married." The debt remaining on the land at the time of the divorce, $44,400, was allocated as marital debt.

*Behm v. Behm*, 427 N.W.2d 332, 337 (N.D.1988); *Bell v. Bell*, 540 N.W.2d 602, 605 (N.D.1995).

[¶ 17] Interestingly, the CD's in Dorothy's name and her daughter's name in the amount of $26,584.94 were divided as a marital asset. Gene, therefore, shared in the accumulation of this asset made possible from Dorothy's earnings.

[¶ 18] This is a long term marriage of 20 years. Dorothy is nearing retirement age and she has significant eyesight problems which the trial court seems to recognize may disable her. Dorothy is 59 years old and Gene is 69 years old. Gene has already retired.

[¶ 19] The trial court found that the parties' incomes would be essentially equal after its allocation of the premarital property, because the farm is left intact so the income needed for Gene is produced. Gene will continue to his death with the status quo in regard to the sources of his income with the exception of the machinery contract. Dorothy's earning capacity, however, is of limited duration. When Dorothy turns 65 and retires, her income will consist of social security and whatever she can earn from interest on her cash award of $77,200 ($35,000 of which will be paid out over five years), assuming she is able to preserve the principal. Her spousal support ends after five years maximum and her property division payments will have ended in five years, also. It has not been reasonably explained why this substantial disparity is equitable after a 20-year marriage.

[¶ 20] Had the trial court considered the entire marital estate and then made a division of the property based on "a somewhat equal property distribution ..." the court may still have awarded the real property brought into the marriage to Gene, but it also may have awarded other property to Dorothy to effectuate an equitable distribution. We are left with a firm and definite conviction the trial court made a mistake in dividing the marital property.

[¶ 21] The judgment is affirmed in part, reversed in part, and remanded to the trial

Here there was no evidence of economic misconduct.

court for a correct application of the law and for a more equal division of the property.

[¶ 22] MESCHKE and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 23] I would affirm the entire Judgment of the district court. The majority says "[i]t is clear from the trial court's Memorandum Opinion that it never included the 'premarital' property in the marital estate." To the contrary, Finding 25 of the trial court's Findings of Fact, Conclusions of Law and Order for Judgment states:

"The real and personal property of the marital estate, the value of the property, the marital debt, the net worth of the marital estate and the division of the marital property and debt is set forth in the Division of Assets and Liabilities that is based upon the Rule 8.3 Asset and Debt Listing of the parties and the reference to numbers shall correspond to the numbers on the 8.3 Asset and Debt Listing. The Division of Assets and Liabilities is attached to the Judgment and incorporated therein by reference."

[¶ 24] A reference to the Rule 8.3 Asset and Debt Listing immediately reveals that all property, including the premarital property, was included and considered by the trial court. Although the premarital property was subsequently awarded to Gene, it is apparent it was considered. If there is a discrepancy between the trial court's memorandum opinion and its findings of fact and conclusions of law, the findings of fact prevail. Rule 52(a), N.D.R.Civ.P.; *Schmidkunz v. Schmidkunz*, 529 N.W.2d 857 (N.D.1995).

[¶ 25] I agree with the majority that the trial court must explain a substantial disparity in the distribution of the property. The issue then becomes whether or not the trial court provided adequate reasons for not giving Dorothy a share of the premarital property Gene brought into the marriage. One need only examine the legal references listing our cases to be aware we have repeatedly said the trial court's findings must be adequate to afford a clear understanding of the

trial court's decision but if the Supreme Court understands from the findings the factual basis for the trial court's determination, the findings are adequately specific. *E.g., Gross v. Sta–Rite Industries, Inc.*, 322 N.W.2d 679 (N.D.1982), *appeal after remand,* 336 N.W.2d 359 (N.D.1983).

[¶ 26] I believe the trial court's findings are adequate here, although the trial court might have been clearer. If, from the trial court's findings of fact, this court understands the factual basis upon which the trial court reached its conclusions, no good purpose is served by remanding for more adequate findings. *E.g., Voskuil v. Voskuil*, 256 N.W.2d 526, 530 (N.D.1977).

[¶ 27] The trial court found that in addition to Gene bringing substantial property into the marriage, all of Gene's farming and ranching income was deposited into a joint account with Dorothy and used to pay the farm and ranch operating expenses and the family living expenses. The court also found the income Dorothy earned outside the home went into her own separate account and was not used to contribute to the farming operation or to the family living expenses, but was "accumulated as cash assets that she has kept personal to herself."

[¶ 28] Gene, age 69, is ten years older than Dorothy and is retired. The court found Gene's income from social security, retirement payments, and the lease of his farmland and equipment provides him with a total income of $14,012, slightly less than the $14,-902 Dorothy is able to currently earn as a certified nurse's assistant. Still, the court awarded Dorothy rehabilitative support of $150 per month for five years because of a vision disability. Spousal support and property division must often be considered together because a difference in earning power is an important factor for both. *Pfliger v. Pfliger*, 461 N.W.2d 432, 436 (N.D.1990). The court's property division gives the parties roughly equivalent incomes after the divorce.

[¶ 29] The court also made a specific finding that the net value of Gene's premarital property when he and Dorothy entered the marriage was $131,500 and at the time of the divorce was $140,005. Consequently, there was very little appreciation or added value

during the marriage to that property. The court also found Dorothy brought into the marriage an automobile, household furnishings, and some cash, property which would ordinarily be consumed during a 20–year marriage. The trial court, nevertheless, awarded Dorothy property valued at $22,500 as "replacements" for that premarital property.

[¶ 30] The trial court did not directly tie the allocation of the premarital property to these findings. Considering the court's specific explanation for dividing the property accumulated during the marriage, there can be no other reason for the court making these findings than to explain its division of the premarital property. I conclude these findings adequately explain why the court awarded each party the premarital property he or she brought into the marriage and why, under the circumstances, the disparity is justified. The property division results in the parties realizing nearly equal incomes so neither is unfairly disadvantaged by the divorce. Whether or not I would have reached the same conclusion, I am not left with a firm and definite conviction the trial court made a mistake in dividing the property. Rule 52(a), N.D.R.Civ.P.; *see e.g., Gibbon v. Gibbon,* 1997 ND 210, ¶ 6, 569 N.W.2d 707.

[¶ 31] Although the majority appears to recognize these findings, it rejects them as a sufficient reasoning for not dividing the property equally. If, as the majority opinion clearly implies, the majority believes an equal distribution of the property is required under these circumstances, I suggest it say so and hold the findings distributing the property to be clearly erroneous, or conclude that a mistake has been made even if the findings are not clearly erroneous, and order an equal division of the property. Under the relatively uncomplicated facts of this case, a remand for further findings is simply another hoop through which the parties and the trial court must jump before the majority orders an equal distribution and the majority ought to say so.

[¶ 32] SANDSTROM, J., concurs.