Linda A. GRONLAND, Plaintiff
and Appellee,

v.

Larry D. GRONLAND, Defendant
and Appellant.

Civ. No. 940193.

Supreme Court of North Dakota.

Feb. 8, 1995.

Erik R. Johnson, of Solberg, Stewart, Miller & Johnson, Fargo, for plaintiff and appellee.

Joe A. Johnson, of Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for defendant and appellant.

MESCHKE, Justice.

Larry Gronland appeals from a divorce decree dividing the marital property and awarding Linda Gronland both rehabilitative and permanent spousal support. We affirm.

Larry and Linda were married in 1971. They have two children, Jason, born May 4, 1975, and Kimberly, born April 4, 1977. Early in the marriage, Larry joined the Air Force and reached the rank of major. While serving, he worked as a nurse anesthetist and upon leaving the military obtained the equivalent of a master's degree in that field. During the past five years, Larry has traveled widely as an independent surgical anesthetist. During that time, he has earned between $100,000 and $120,000 each year.

The parties mutually agreed Linda would not work outside the home while the children were young. Linda has a certificate as a licensed practical nurse and did some nursing work while Larry attended school to earn his master's degree. Linda also dabbled in the real estate business, but concluded that she would not be able to earn a living wage in that field. She decided she needed additional education to get a good job, and she is currently working on a master's degree in family therapy.

The marriage irretrievably broke down, and the spouses separated when Larry began traveling in 1987. Linda filed for divorce in 1993. At the time of the divorce proceedings, Jason was an adult, and the spouses agreed Linda should have physical custody of Kimberly with reasonable visitation rights for Larry. They also stipulated Larry would pay Linda $1,023 per month for child support

until Kimberly reached age 18 or completed high school, but not beyond Kimberly's 19th birthday. The trial court divided the marital property, awarded Linda rehabilitative spousal support of $2,900 per month through December 1996 to enable her to obtain a degree in family therapy, and awarded her permanent spousal support of $1,000 per month until her death, her remarriage, or Larry began drawing social security payments. Larry appealed.

Larry claims the division of property is not equitable. Larry summarized his disagreement with the property division thus:

> The parties were in agreement as to the distribution of all the property except the Dalkon Shield lawsuit settlement of $17,-000.00, Larry's individual retirement account of $46,000.00, and Larry's military retirement. The trial court awarded Linda all the $17,000.00 from the Dalkon lawsuit settlement, all of Larry's IRA account of $46,000.00, and one-half of Larry's military retirement accumulated during the marriage.
>
> \*    \*    \*    \*    \*    \*
>
> Larry testified that he felt that he was entitled to part of the settlement from the Dalkon Shield lawsuit ... and his military pension....

■ Under NDCC 14–05–24, the court, in granting a divorce, is required to make an equitable distribution of the marital property as may seem just and proper and may also make such suitable allowances to the other spouse for support during life or for a shorter period as to the court may seem just. As we explained in *Steckler v. Steckler*, 519 N.W.2d 23, 24–25 (N.D.1994), a trial court's findings on valuation and the division of marital property cannot be set aside on appeal unless they are clearly erroneous under NDRCivP 52(a), or they are induced by an erroneous view of the law.

■ During the marriage, Linda received $17,000 in settlement for personal injuries she incurred prior to the marriage while using a Dalkon Shield intrauterine device. The trial court correctly recognized that these monies were part of the marital estate but questionably concluded Linda should re-ceive the entire settlement as "personal to her" for the injury, pain, and suffering she had endured. However, we see in the court's findings other significant factors, particularly that Linda is seriously disadvantaged by the divorce and that both spouses must experience some sacrifice "with what is going to be available in terms of income and property." Linda has the much greater need for income producing assets together with the permanent spousal support awarded. Therefore, we conclude the court's award to Linda of the entire Dalkon Shield settlement was not clearly erroneous.

■ The court also awarded Linda the entire $46,000 balance of Larry's individual retirement account (IRA) and a proportionate share of Larry's vested military retirement benefits. The court reasoned Linda should receive the IRA because she, unlike Larry, would not be able to earn enough to accumulate adequate retirement funds. *See Wheeler v. Wheeler*, 419 N.W.2d 923, 926–27 (N.D.1988) (Obligee's "standard of living and financial needs, such as for retirement funding, must be comparably weighed with [obligor's] standard of living and needs."). The court also divided Larry's military retirement benefits according to a formula that we have often approved for dividing such benefits in divorce actions. *Bullock v. Bullock*, 354 N.W.2d 904 (N.D.1984). *See also Welder v. Welder*, 520 N.W.2d 813 (N.D.1994). We conclude the court's distribution of the IRA and the military retirement benefits was not clearly erroneous.

■ Larry complains the trial court's property division gives Linda a net distribution of about $72,000 but leaves Larry with a negative distribution of nearly $27,000 in debts. Larry's argument misleads. Larry claims Linda was awarded the parties' home that the court valued at $71,000 with a $58,-000 mortgage. Linda will be responsible for that large mortgage on her house, and Larry failed to acknowledge in his appellate brief that the court specifically directed Linda, if and when she sells the home, to equally divide the first $13,000 of net proceeds of the sale with Larry.

■ Larry's explanation about the tax debt assessed against him by the court is inaccurate. Larry lists as part of his debt the 1992 and 1993 federal and state income tax obligations. However, during the trial Larry testified the 1992 federal income taxes, about $24,000, had already been paid. Linda agreed during the trial that, upon receiving assurances Larry had paid the 1992 taxes, she would agree to file an amended joint 1992 return with Larry, rather than a separate return, to obtain a near $6,000 tax savings—enough to pay the remaining 1992 state income tax obligation and to make a payment of about $2,000 on the 1993 taxes. Linda testified that, beginning in 1993, Larry assumed all responsibility for escrowing and paying the parties' income taxes that were incurred almost entirely from Larry's earnings. Larry did not dispute this testimony, and we conclude the court did not err in requiring Larry to take full responsibility for the 1992 and 1993 income tax obligations.

■ The party challenging a finding of fact on appeal bears the burden of demonstrating the finding is clearly erroneous. *Routledge v. Routledge,* 377 N.W.2d 542 (N.D.1985). Larry has failed to convince us the trial court made a mistake in dividing the marital property.

■■ Larry also complains the trial court erred in awarding Linda rehabilitative and permanent spousal support. He claims the $2,900 per month rehabilitative support is excessive and he cannot afford it. He also claims Linda should receive no permanent spousal support because when it begins she will have ample independent income without it. Spousal support determinations are findings of fact that will not be reversed on appeal unless clearly erroneous. *Wiege v. Wiege,* 518 N.W.2d 708 (N.D.1994). As we explained in *Pfliger v. Pfliger,* 461 N.W.2d 432 (N.D.1990), we do not consider issues of property division and spousal support separately or in a vacuum, but rather we deal with those matters together, especially when there is a large difference in earning power between the spouses.

The trial court specifically found that Linda has "stuck by Larry through thick and thin in the last 20 years to her disadvantage"

and that Linda has been disadvantaged by the divorce. The court found Larry was secretive about the family's financial affairs, which the court described as a "disaster." The court also found a large disparity in earning ability that will continue indefinitely. Larry concedes that he earned more than $120,000 in 1993 and that for the last five years his earnings have exceeded $100,000 per year. Larry also concedes that Linda's potential future earning capacity "is unlikely to" exceed $30,000 per year.

■ Continuing a standard of living is a valid support consideration in a long-term marriage, as is balancing the burdens created by the separation when it is impossible to maintain two households at the predivorce standard of living. *Wahlberg v. Wahlberg,* 479 N.W.2d 143 (N.D.1992). Rehabilitative spousal support is preferred to give a spouse an opportunity to become self-supporting, but support may be required indefinitely to maintain a spouse who cannot be adequately restored to independent economic status. *LaVoi v. LaVoi,* 505 N.W.2d 384, 386 (N.D. 1993). Permanent support is not limited to a spouse who is incapable of any rehabilitation, but may be awarded to a spouse incapable of adequate rehabilitation or self-support. *Wiege v. Wiege,* 518 N.W.2d at 711. In awarding spousal support, the court should consider the needs of the spouse disadvantaged by the divorce as well as the supporting spouse's needs and ability to pay. *Sateren v. Sateren,* 488 N.W.2d 631, 634 (N.D. 1992). The trial court did that here. The great disparity in earning capacity played an obviously significant role in this award of spousal support.

The court considered both spouses' claimed expenses and earnings. The court concluded Linda would need $2,900 per month in spousal support through December 1996 to pay her expenses while getting additional education to become partially self-supporting. However, the court also concluded that Linda would remain disadvantaged by the divorce and would be incapable of independently sustaining her standard of living. This is a proper basis for awarding permanent spousal support. *Wiege v. Wiege,* 518

N.W.2d at 712. *See also Heley v. Heley*, 506 N.W.2d 715, 720 (N.D.1993). Even with cash assets of $63,000 set aside to her, the court concluded Linda should receive $1,000 per month indefinitely as permanent spousal support to adjust for the reduction in Linda's standard of living caused by the divorce.

■ Larry has not convinced us that the spousal support award is excessive for Linda's needs or that he lacks the ability to pay it. Larry says he is tired of traveling for the higher income of an independent contractor and that he wants to settle down to a permanent position as an anesthetist that, he asserts, will reduce his income by $20,000 or $30,000 per year. Accepting as true Larry's assertion about a likely future reduction in his income, he will still maintain an earning capacity between $80,000 and $100,000 per year, three or four times Linda's. We are not convinced that would leave him with inadequate earnings to afford permanent spousal support of $1,000 per month. Furthermore, if he has a material change in circumstances, the trial court can consider it on a motion for modification of spousal support. *Huffman v. Huffman*, 477 N.W.2d 594 (N.D.1991); *Schaff v. Schaff*, 449 N.W.2d 570 (N.D.1989). We conclude the trial court's award of spousal support is not clearly erroneous.

Linda requested attorney fees on appeal. Although we have concurrent jurisdiction with the trial court to award attorney fees on appeal, we prefer that the trial court decide it. *See Sullivan v. Quist*, 506 N.W.2d 394 (N.D.1993). We affirm the judgment and remand to the trial court for a decision on Linda's request for attorney fees on appeal.

VANDE WALLE, C.J., and NEUMANN, J., concur.

LEVINE and SANDSTROM, JJ., concur in the result.