1998 ND 100

**Judith Lynn GIERKE, Plaintiff, Appellant and Cross–Appellee.**

v.

**H.F. GIERKE III, Defendant, Appellee, and Cross–Appellant.**

**Civil No. 970207.**

Supreme Court of North Dakota.

May 13, 1998.

Jon P. Parrington (argued), of Pustorino, Pederson, Tilton & Parrington, Minneapolis, for plaintiff and appellant.

LaVern C. Neff (argued), of Neff, Cresap, Rathert, Eiken & Irigoin, Williston, for defendant and appellee.

NEUMANN, Justice.

[¶ 1] Judith Lynn Gierke appealed and H.F. Gierke III cross-appealed from a divorce decree dividing their marital property and awarding her spousal support. We hold the appeal is timely, and we would affirm the judgment in its entirety.

[¶ 2] When Judith and H.F. Gierke were married in 1965, he was attending law school and she was working as a sales clerk. During their marriage, they had four children who were all adults when the divorce decree was entered. Upon graduation from law school in 1966, H.F. Gierke entered the military service. He was discharged in 1971 and began practicing law in Watford City. He had received an interest in his parents' ranch, and he also helped operate the ranch. In 1983 he was appointed a justice of the North Dakota Supreme Court, and in 1991 he was appointed judge of the United States Court of Military Appeals. During the marriage, Judith Gierke primarily served as homemaker for the family, but in 1984 she began attending Mary College and received a nursing degree in 1987.

[¶ 3] In 1991, Judith Gierke commenced this divorce action in Mountrail County. In 1993, the trial court entered partial summary judgment granting the parties a divorce, but reserving property distribution and spousal support issues. Those issues were tried in July 1994.

[¶ 4] In March 1995, the trial court issued a memorandum decision valuing the parties' marital estate at $666,216, but finding the parties were heavily burdened with debt which the court eventually valued at $831,-263.[1] The parties' marital estate included the ranch, valued at $452,000, and mineral interests, valued at $57,800, given to H.F. Gierke by his parents, as well as a $26,000 office building in Watford City. The court adopted the parties' agreement allowing H.F. Gierke to receive marital property valued at $615,216, and the parties' marital debt. The court awarded Judith Gierke personal property valued at $48,000. The court also awarded each party miscellaneous personal property in their possession, collectively valued at $3,000. The court found Judith Gierke's income in 1993 was $16,000 and H.F. Gierke's gross income in 1993 was $183,523. The court decided Judith Gierke was disadvantaged by the divorce and ordered H.F. Gierke to pay her spousal support of $2,500 per month for five years, $1,500 per month until she was 65, and $1,000 per month thereafter for "so long as [she is] alive." The court also ordered H.F. Gierke to pay Judith Gierke $15,000 in attorney fees.

[¶ 5] In July 1995, H.F. Gierke moved for reconsideration. The trial court denied his motion in February 1996 and ordered him to pay Judith Gierke $1,000 in attorney fees for responding to the motion. The court also issued findings of fact, conclusions of law and an order for judgment in February 1996, and directed Judith Gierke's counsel to prepare an order denying the motion for reconsideration and a judgment. After further posturing by both parties and substitution of counsel for Judith Gierke, she submitted a proposed judgment with some variations from the court's order for judgment. On January 30, 1997, the court sent the parties'

---

1. An exhibit prepared by H.F. Gierke's accountant identified the debt as (1) a loan from Farm Credit Services with a principal balance of approximately $367,500, (2) a loan from Norwest Bank with a principal balance of approximately $41,000, (3) a loan from Lakeside Bank with a principal balance of approximately $94,000, and (4) loans from H.F. Gierke's mother with a principal balance of approximately $236,400. The exhibit also listed debts of $20,000 to the parties' son, Craig Gierke, $20,000 to their daughter, Michelle Gierke, $22,863 to H.F. Gierke's attorney's law firm, $15,000 for credit cards, $10,216 to GMAC, and $3,900 to Equitable Life.

attorneys a letter stating it had "reworked and signed [Judith Gierke's] proposed Order and Judgment." The court said it was sending the parties' attorneys a copy of the "adjusted" judgment and was returning the file to the Clerk of Court in Mountrail County. The judgment was stamped "filed" on February 25, 1997. On June 23, 1997, Judith Gierke filed an appeal, and on July 1, 1997, H.F. Gierke filed a cross-appeal from the judgment.

I

[¶ 6] We initially consider whether this appeal is timely under N.D.R.App.P. 4(a), which required a notice of appeal to be "filed with the clerk of the trial court within 60 days of the date of the service of notice of entry of the judgment or order appealed from." [2] The responsibility to serve notice of entry of judgment to commence the period for appeal is upon counsel for the prevailing party, and the time for appeal does not begin to run until notice is served. *Lang v. Bank of North Dakota,* 377 N.W.2d 575, 578 (N.D.1985). *See* N.D.R.Civ.P. 77(d) and explanatory note (counsel for prevailing party responsible for serving notice of entry of judgment). This record does not include a service of notice of entry of the judgment, and the time for this appeal technically has not commenced.

[¶ 7] This Court, however, has held "actual knowledge of entry of a judgment or order commences the running of the time for appeal where the actual knowledge is clearly evidenced in the record." *Lang,* 377 N.W.2d at 578. *See also Thorson v. Thorson,* 541 N.W.2d 692, 694–95 (N.D.1996); *Morley v. Morley,* 440 N.W.2d 493, 495–96 (N.D.1989); *Klaudt v. Klaudt,* 156 N.W.2d 72, 76 (N.D. 1968).

[¶ 8] In *Lang,* the appellant filed a March 1985 appeal from a May 1984 order denying his motion to enjoin foreclosure by advertisement. The record did not establish the appellant was served with notice of entry of the May 1984 order. In June 1984, however, the appellant had filed an application for writ of

mandamus in this Court to enjoin the sale of his land. The application was denied. *Lang v. Glaser,* 359 N.W.2d 884 (N.D.1985). We held the appellant's March 1985 appeal from the May 1984 order was not timely, because the time for appeal began to run when the appellant had actual knowledge of entry of the May 1984 order as evidenced by his June 1984 application for writ of mandamus. *Lang,* 377 N.W.2d at 578.

[¶ 9] In *Morley,* an order modifying child custody was entered in May 1987, but the appellant was not served with notice of entry of the order. A subsequent hearing regarding custody was scheduled for September 1987, but was canceled by stipulation of the parties on September 4, 1987. In February 1988, the appellant's attorney caused entry of an amended judgment conforming to the May 1987 order, and gave notice of entry of the amended judgment. The appellant then appealed from the May 1987 order. This Court dismissed the appeal, concluding the appellant's stipulation to cancel the September 1987 hearing regarding custody constituted actual knowledge of the May 1987 custody order clearly evidenced in the record. *Morley,* 440 N.W.2d at 495–96.

[¶ 10] In *Thorson,* this Court again confronted an attempted appeal where the appellant was not served with notice of entry of an order dismissing a divorce action. We said "the factual predicate for determining that an appealing party had actual knowledge of entry of the judgment or order has included some action taken by the appealing party, as clearly evidenced in the record." *Thorson,* 541 N.W.2d at 694. We concluded an affidavit of service by mail prepared on behalf of the trial court did not equate with actual knowledge under our precedents establishing an exception to the requirement of service of notice of entry of judgment by the prevailing party. *Id.* at 694–95. We decided actual knowledge of entry of an order requires some affirmative action by the appellant evident on the record, and we declined to dismiss the appeal because the record did not include any such action by the appellant

---

**2.** N.D.R.App.P. 4(a) was amended, effective March 1, 1998, to delete the phrase "the date of."

which would have rendered the appeal untimely.

[¶ 11] The requirement for service of notice of entry of a judgment or order provides a bright line for starting the time for appeal. Our decisions have permitted a limited exception to that requirement when the appellant has taken some affirmative action as clearly evidenced in the record. *Thorson,* 541 N.W.2d at 694–95. *See Lang,* 377 N.W.2d at 578 (appellant's application for writ of mandamus constituted actual knowledge of the order clearly evidenced in the record); *Morley,* 440 N.W.2d at 495–96 (appellant's stipulation to cancel custody hearing constituted actual knowledge in the record of prior custody modification). We adhere to our decisions requiring actual knowledge evidenced by some affirmative action by the appellant in the record, and we reject H.F. Gierke's attempt to reconstruct the record with correspondence between counsel to attempt to show Judith Gierke's actual knowledge of the judgment. Those documents are not part of the record, *see* N.D.R.App.P. 10(a) (composition of record on appeal), and do not show the requisite affirmative action by the appellant in the record. *Cf. Thorson,* 541 N.W.2d at 694 (affidavit of service by mail prepared on behalf of court did not equate with actual knowledge clearly evidenced in the record). Allowing the parties to proceed in this manner would immerse this Court into a factual inquiry about the appellant's actual knowledge and would needlessly inhibit the certainty required for calculating the time for appeal.

[¶ 12] Here, the trial court sent a letter, dated January 30, 1997, to the parties' attorneys indicating it was "sending a photocopy of the 'adjusted' Order and Judgment ... [and was] returning the court file to the Clerk of Court in Mountrail County." The Clerk of the District Court for Mountrail County stamped the judgment "filed" on February 25, 1997. Nothing in this record, however, establishes Judith Gierke was served with notice of entry of the judgment, nor is there any affirmative action by her clearly evidenced in the record until her attorney filed an affidavit of identification and a partial satisfaction of judgment by H.F.

Gierke in May 1997. We conclude those documents constitute affirmative action by Judith Gierke which is actual knowledge of the judgment clearly evidenced in the record for purposes of triggering the time for appeal. Judith Gierke's appeal was filed within 60 days after those documents were filed. Her appeal therefore is timely under N.D.R.App.P. 4(a). H.F. Gierke's cross-appeal was filed within 14 days of Judith Gierke's appeal, and is also timely. *See* N.D.R.App.P. 4(a).

## II

[¶ 13] Judith Gierke contends the trial court erred in failing to order H.F. Gierke to reimburse her $20,000 for half of the proceeds from the sale of the parties' Bismarck house. In 1984, the parties' minor daughter, Michelle Gierke, received a $30,000 settlement for a dental malpractice claim. The proceeds from the settlement were placed in trust for Michelle Gierke, with H.F. Gierke named as trustee. During the parties' marriage, the trust proceeds plus accrued interest, which the parties estimated at approximately $10,000, were exhausted for purposes other than Michelle Gierke's benefit. The trial court ordered the parties to use $40,000 from the sale of their Bismarck house to reimburse Michelle Gierke's trust.

[¶ 14] Judith Gierke argues although the parties agreed to use proceeds from the sale of the Bismarck house to reimburse the trust, H.F. Gierke wrongfully converted the trust funds without her consent, and the trial court should have ordered him to reimburse her $20,000 for her share of the proceeds from the sale of the house.

[¶ 15] A trial court's decision on the distribution of marital property is treated as a finding of fact and will not be reversed on appeal unless clearly erroneous under N.D.R.Civ.P. 52(a). *Lohstreter v. Lohstreter,* 1998 ND 7, ¶ 16, 574 N.W.2d 790. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence the reviewing court is left with a definite and firm conviction a mistake has

been made. *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 13, 563 N.W.2d 377. On appeal, the complaining party bears the burden of demonstrating a finding of fact is clearly erroneous. *Id.*

[¶ 16] According to Judith Gierke, H.F. Gierke wrongfully converted the trust proceeds for his personal use without her consent or knowledge. According to H.F. Gierke, the trust money was used for family obligations with Judith Gierke's knowledge.

[¶ 17] At trial Judith Gierke testified:

"Q   When did you first learn that the money had been spent?

"A He told me he was going to take it and you don't dispute him. And I just said I have a problem with that. What if we get killed, you know, off on some legal trip or something? And I said she'd be out the, you know, her money and I said we have to tie it up or secure it, and that's when he said, well, we'll take it out of the, if we sell the house, I mean if we got killed the house would be sold and it could come off the, out of that. And that's the way—

"Q   Do you know what the money was spent for?

"A He was, I remember him saying something, he didn't break it down, he just said something at the ranch or the ranch.

"Q   Okay. So when the house was sold, did you agree that $40,000 could be taken from the proceeds to repay Michelle what had been taken from her?

"A I was trying to keep it secured for her so I did not agree that way, because I have a hard time explaining it. I did not agree that I should have to pay the 20,000 because I knew the financial tangles were going to get really messy. And I wanted her to get her money. That's all I can say.

"Q   You did want her to have that $40,-000?

"A I wanted her to make sure she got what she was entitled to.

"Q   Okay, but you didn't want necessarily that you should be charged for—

"A No, I didn't think it was fair.

"Q   —repaying half of it?

"A No, because it was entirely stuff at the ranch. . . ."

[¶ 18] Judith Gierke's testimony establishes the trust proceeds were used "entirely [for] stuff at the ranch." The ranch was part of the parties' marital estate. We do not condone the use of the trust proceeds for family obligations. We believe, however, Judith Gierke's testimony belies her claim H.F. Gierke exhausted the trust without her consent or knowledge and supports her acquiescence in use of the trust proceeds for family obligations. We are not left with a definite and firm conviction the trial court made a mistake in refusing to order H.F. Gierke to reimburse Judith Gierke for money used from the trust. *See Lohstreter*, 1998 ND 7, ¶¶ 19–20, 574 N.W.2d 790 (affirming equal allocation of tax debts from joint decision to cash IRA and reversing allocation of other debts incurred by one spouse alone). We therefore hold the trial court's decision is not clearly erroneous.

### III

[¶ 19] Judith Gierke contends the trial court erred in deciding H.F. Gierke's spousal support obligation. She argues the marital estate awarded to her was virtually worthless and the property awarded to H.F. Gierke was worth about $615,000. She recognizes the assets awarded to H.F. Gierke are encumbered with marital debt, but contends the $236,400 debt to his mother is questionable. *See* fn. 1. She argues the property awarded to him is appreciating in value and has substantial income-producing capabilities with tax benefits. She asserts those disparate factors in the property distribution and the parties' disproportionate incomes entitle her to permanent spousal support of 30 percent of H.F. Gierke's judicial salary, which she asserts would currently impose a $3,350 per month spousal support obligation on him. In his cross-appeal, H.F. Gierke responds the court erred in ordering him to pay Judith Gierke any spousal support because the award was not equitably balanced by his assumption of the family debt.

[¶ 20] A trial court's decision regarding spousal support is treated as a finding of fact and is subject to the clearly erroneous standard of N.D.R.Civ.P. 52(a). *Van Klootwyk*, 1997 ND 88, ¶ 13, 563 N.W.2d 377. We have said a trial court's property division and spousal support award often need to be examined and dealt with together. *Glander v. Glander*, 1997 ND 192, ¶ 7, 569 N.W.2d 262.

[¶ 21] The *Ruff–Fischer* guidelines apply to decisions about the amount and duration of spousal support, and require consideration of:

" 'the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.' "

*Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377, citing *Weir v. Weir*, 374 N.W.2d 858, 862 (N.D.1985).

[¶ 22] In *Heley v. Heley*, 506 N.W.2d 715, 719–720 (N.D.1993) (citations omitted), we described two types of spousal support:

"Permanent spousal support is appropriate to provide traditional maintenance for a spouse who is incapable of rehabilitation.... Rehabilitative spousal support, on the other hand, is awarded to provide a disadvantaged spouse time and resources to acquire an education, training, work skills, or experience that will enable the spouse to become self-supporting.... The purpose of rehabilitative spousal support is not limited to assisting a disadvantaged spouse in achieving educational goals. In *Wahlberg v. Wahlberg*, 479 N.W.2d 143, 145 (N.D.1992), this court noted:

" 'We have, however, also described the purpose of rehabilitative support in terms of enabling a disadvantaged spouse to achieve "suitable" and "appropriate" self-support.... Accordingly,

we have affirmed as appropriate awards of rehabilitative spousal support under a variety of circumstances which relate to the disadvantaged spouse's capacity for self-support. Continuance of a standard of living is a valid consideration in spousal support determinations, ... as is balancing the burdens created by the separation when it is impossible to maintain two households at the pre-divorce standard.... The trial court may consider the disparate earning capacity of the parties, ... and should make a support determination consonant with the property distribution as the illiquidity or the lack of income producing capacity of property may work a disadvantage to one spouse, ...' "

In *Van Klootwyk*, 1997 ND 88, ¶¶ 15–16, 563 N.W.2d 377, we effectively characterized our approach to rehabilitative spousal support as the "equitable doctrine," and said we had not adopted the "minimalist doctrine," which has as its objective to educate and retrain the recipient for minimal self-sufficiency.

[¶ 23] We reject Judith Gierke's argument the trial court applied the minimalist doctrine of spousal support. The trial court's decision reflects careful consideration for both parties' financial circumstances, including the substantial disparity of earning ability and H.F. Gierke's ability to pay spousal support. The court balanced the parties' financial circumstances, present incomes, earning potentials, and debt payments for the lifestyle enjoyed during their marriage. Although Judith Gierke makes several prognostic arguments regarding the parties' future relative financial situation, her argument minimizes the marital debt assumed by H.F. Gierke.

[¶ 24] Merely because we may have viewed the evidence differently does not entitle us to retry the spousal support issue on appeal. *See Beals v. Beals*, 517 N.W.2d 413, 416 (N.D.1994). We cannot say the trial court's decision regarding H.F. Gierke's current spousal support obligation is clearly erroneous. The court, however, retains continuing jurisdiction to modify spousal support if the parties' financial circumstances change in the

future. *Id.* We hold the trial court's spousal support award is not clearly erroneous.

## IV

■■■ [¶ 25] Judith Gierke argues the trial court erred in failing to require H.F. Gierke to provide security for his spousal support obligation. In April 1995, following receipt of the court's memorandum decision, Judith Gierke expressed concern about the court's failure to require security for H.F. Gierke's spousal support obligation. In February and April 1996, she reminded the court the issue of security for H.F. Gierke's spousal support obligation had not been resolved. In Judith Gierke's proposed judgment, she included language requiring H.F. Gierke to purchase and maintain $250,000 in life insurance with her as the beneficiary. The trial court deleted that language with a notation "this was not a directive of the Court. I have no objection if it is voluntarily done."

[¶ 26] Under N.D.C.C. § 14–05–25, a trial court may require reasonable security for a maintenance obligation and may employ any "remedy applicable to the case" to enforce spousal support. *See Martian v. Martian,* 399 N.W.2d 849, 851–52 (N.D.1987). *See also* N.D.C.C. § 14–05–25.2 (spousal support order may be enforced in any manner provided for enforcement of child support under N.D.C.C. Ch. 14–09). A trial court thus has discretion to order security for a spousal support obligation.

[¶ 27] In *Stoutland v. Estate of Stoutland,* 103 N.W.2d 286, 291 (N.D.1960), this Court held, under the predecessor of N.D.C.C. § 14–05–24, a spousal support obligee was entitled to payments from the obligor's estate where the divorce decree directed the obligor to make monthly alimony payments to the obligee until her remarriage or death. *See also Seablom v. Seablom,* 348 N.W.2d 920, 924 (N.D.1984) (obligor's death does not necessarily terminate spousal support); *Matter of Estate of Gustafson,* 287 N.W.2d 700, 704 (N.D.1980) (alimony payments did not terminate upon obligor's death).

---

3. This conclusion represents the view of two jus- tices. Justice Maring's opinion states the view of

[¶ 28] Here, the judgment directs H.F. Gierke to pay Judith Gierke spousal support "until [her] death." Under *Stoutland,* absent a modification, Judith Gierke is entitled to spousal support from H.F. Gierke's estate if he predeceases her. The trial court was fully apprised of the parties' current circumstances and was in a much better position to assess the need for security for H.F. Gierke's spousal support obligation than this Court. The trial court declined to direct H.F. Gierke to purchase life insurance naming Judith Gierke as beneficiary. We are not persuaded Judith Gierke has demonstrated the court abused its discretion in refusing to order H.F. Gierke to purchase life insurance as security for his spousal support obligation.[3]

## V

[¶ 29] Judith Gierke contends the trial court erred in failing to order H.F. Gierke to pay spousal support to the Clerk of Court of Burleigh County. Judith Gierke commenced this action in Mountrail County, and the matter was heard there. Judith Gierke's proposed judgment included language requiring H.F. Gierke to "make all spousal support payments directly to the Clerk of Court of Burleigh County, where [she] resides." The trial court changed the proposed language to require H.F. Gierke's payments directly to Mountrail County, where the case was litigated.

■■■ [¶ 30] Judith Gierke has cited no authority for requiring a trial court to order spousal support payments to the clerk of the district court in a county other than the place of trial. The record reflects Judith Gierke did not raise this issue until she submitted the proposed judgment. The insertion of this language in her proposed judgment was inadequate to raise this issue.

## VI

■■■ [¶ 31] Judith Gierke contends the trial court erred in denying her request for attorney's fees incurred for securing a court order allowing her to order a partial transcript for this appeal. Judith Gierke asked

the majority on this issue.

H.F. Gierke to stipulate to a partial transcript for appeal. He refused, and she then moved for an order allowing her to provide a partial transcript. The trial court authorized her to order a partial transcript, but denied her request for attorney fees for procuring the order.

[¶ 32] A trial court has broad discretion regarding attorney fees in divorce proceedings, and absent an abuse of discretion, we will not reverse the court's decision. *Heller v. Heller*, 367 N.W.2d 179, 184 (N.D.1985). We conclude the trial court did not abuse its discretion in denying Judith Gierke's request for attorney fees incurred for requesting a partial transcript for appeal.

## VII

[¶ 33] Judith Gierke requests attorney fees incurred in this appeal. H.F. Gierke argues her appeal is frivolous and seeks his attorney fees for appeal. We reject both parties' request for attorney fees for this appeal.

## VIII

[¶ 34] We affirm the divorce judgment.

[¶ 35] SANDSTROM, J., concurs.

[¶ 36] THOMAS J. SCHNEIDER and DONOVAN FOUGHTY, District Judges, sitting in place of VANDE WALLE, C.J., and MESCHKE, J., disqualified.

MARING, Justice, concurring in part and dissenting in part.

[¶ 37] I concur in the majority's opinion with the exception of its conclusions in parts III and IV that the trial court's decision regarding spousal support is not clearly erroneous and that the trial court's decision regarding reasonable security for spousal support is not an abuse of discretion, respectively.

[¶ 38] As the majority points out, this Court has long held the trial court must consider the *Ruff–Fischer* guidelines in deciding whether to award spousal support. *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377. The majority concludes the trial court's decision on spousal support reflects careful consideration of several of the *Ruff–Fischer* guidelines including both parties' financial circumstances, their substantial disparity of earning abilities, and H.F. Gierke's debt payments.

[¶ 39] The trial court found the parties were married to each other on June 12, 1965, and divorced on July 13, 1993. At the time of the divorce, they had been married 28 years, one month, and one day. This was a long term marriage. Judith Gierke was 21 years old when she married H.F. Gierke. She had one year of college and had been an airline stewardess for one and one-half years. While H.F. Gierke was in his last year of law school, Judith Gierke worked for two and one-half months at the University Bookstore, but then quit because of her pregnancy with their first child who was born in May 1966. Judith Gierke followed H.F. Gierke to Fort Bliss, Texas, where he was stationed in the military. Their second child was born in 1968. H.F. Gierke was then transferred to Hawaii for two years, and Judith Gierke went with him. He volunteered for duty in Vietnam, and Judith Gierke moved back to Watford City, North Dakota, in 1969. After H.F. Gierke returned from Vietnam, Judith Gierke joined him in Colorado Springs, Colorado.

[¶ 40] In 1971, when H.F. Gierke got out of the army, he and Judith Gierke moved back to H.F. Gierke's parents' ranch. H.F. Gierke began practicing law in Watford City. They lived either on the ranch or in Watford City until they moved to Bismarck. Judith Gierke testified that H.F. Gierke was not involved in the day-to-day child care or house care and that she fulfilled those roles. Judith Gierke did work for one year at a nursing home in Watford City before their move to Bismarck. The couple moved to Bismarck in anticipation of H.F. Gierke's appointment to the North Dakota Supreme Court. In 1983, H.F. Gierke was appointed to the North Dakota Supreme Court.

[¶ 41] At the suggestion of H.F. Gierke, Judith Gierke started taking classes in 1984 at Mary College after she had primarily been a homemaker for almost 20 years. She still had four children to take care of at the time.

She applied for nursing school at Med Center One and earned a nursing diploma in 1987. She started work at Med Center One in September, 1987, and was considered full-time in less than a year. She eventually went to a PRN status because H.F. Gierke became commander of the American Legion and wanted her to take time off to travel with him. She accompanied him at his insistence for approximately 21 to 22 days on an American Legion trip to Europe. When she returned, she could not get enough PRN hours at Med Center One so she obtained a job at St. Alexius and was almost full time PRN for close to two years. She then moved into a position in the GYN unit where she worked at the time of trial. She testified she works nights 12:00 a.m. to 8:00 a.m.

[¶ 42] Judith Gierke had one year of college when the parties married. She was a homemaker for almost 20 years. She deferred her own education and career to take care of their children and home. It was not until 1987 that Judith Gierke earned a nursing degree. Even after obtaining her nursing degree, she continued to place her career second for the advancement of her husband's career.

[¶ 43] At the time of the divorce trial in 1994, Judith Gierke was 50 years old. Judith Gierke's gross income was $16,000, and H.F. Gierke's gross income was $183,000. The trial court found Judith Gierke has health problems including "ulcers, high blood pressure, psychological and emotional problems, back problems, and anxiety." The trial court found the debt of the parties exceeded the value of the real and personal property owned by the parties. All of the income producing property and all of the debt were awarded to H.F. Gierke. Judith Gierke received personal property none of which was income producing.

[¶ 44] Based on these findings the trial court correctly concluded Judith Gierke's "health problems and inability to maintain employment shows a need for rehabilitative spousal support" and Judith Gierke's "disproportionate share of the property and income producing ability indicate that she is an economically disadvantaged spouse and will require spousal support." *See Van Klootwyk,*

1997 ND 88, 563 N.W.2d 377. The majority opinion's analysis of the trial court's decision ends there, however.

[¶ 45] The trial court's judgment states Judith Gierke is to receive spousal support as follows:

> The Defendant shall pay to Plaintiff as spousal support the sum of $2,500 per month for a period of four years beginning May 1, 1995. Thereafter the defendant shall pay Plaintiff the sum of $1,500 per month until she reaches the age of 65. Beginning the first month after Plaintiff's 65th birthday, Defendant shall pay $1,000 per month until Plaintiff's death.

Although we have held a trial court need not make specific findings as to each *Ruff–Fischer* guideline, it must explain its rationale for its determination. *Wiege v. Wiege,* 518 N.W.2d 708, 710 (N.D.1994). With regard to the trial court's reduction of Judith Gierke's spousal support after four years and again at age 65, there is no explanation. The only possible explanation for giving Judith Gierke $2,500 only for the first four years is in the letter memorandum of the court dated March 28, 1995, which is not incorporated in the findings of fact, conclusions of law, or judgment. Therein the trial court indicates: "I have given the Plaintiff a substantial sum for the first 5 years and that will give her an opportunity to rehabilitate herself mentally and physically." He also notes Judith Gierke will "have the opportunity to establish some sort of retirement program through her nursing career in the next 13 or 14 years." The basis, however, on which the trial court relies to award spousal support in the first place does not change in four years nor does it change at age 65. There are no findings that on either date the substantial disparity in earning ability will change, or that the financial circumstances of the parties will change. On the basis of this record, any change would be pure speculation on the part of the trial court. The trial court obviously was of the belief at the time of trial that H.F. Gierke was able to financially pay support of $2,500 a month beginning May 1, 1995, plus restructure his debt. There is not any evidence Judith Gierke can "rehabilitate" herself in four to five years or earn a meaningful

retirement, if any, at this late time in her work life.

[¶ 46] In addition, this Court has recognized after a marriage of substantial duration, without sufficient property and without a comparable earning ability sufficient to maintain the standard of living enjoyed during the marriage, the disadvantaged spouse is entitled to spousal support which provides "an equitable sharing of the overall reduction in the parties' separate standards of living." *Weir v. Weir*, 374 N.W.2d 858, 864 (N.D. 1985) (citing O'Kelly, *Three Concepts of Alimony in North Dakota*, 1 U.N.D. Faculty Journal 69 (1982)); *see Gronland v. Gronland*, 527 N.W.2d 250, 253 (N.D.1995). Judith Gierke will remain disadvantaged and incapable of independently sustaining her standard of living in four years and at age 65. Even if we were to speculate her income will increase, then so must we speculate H.F. Gierke's will increase. Also if we were to speculate she will earn retirement funds, so will H.F. Gierke earn retirement funds. The substantial disparity in financial condition between the two of them will not change. Furthermore, if there is a material change in circumstances on Judith Gierke's part or H.F. Gierke's part, the trial court can consider it on a motion for modification of spousal support. *Gronland*, 527 N.W.2d at 254.

[¶ 47] Without some explanation of its rationale, the trial court's finding reducing the spousal support in the future is not supported by the evidence, and I am left with a firm conviction a mistake has been made. I would reverse and remand for amendment of paragraph V of the judgment setting spousal support at $2,500 a month until Plaintiff's death.

[¶ 48] On appeal Judith Gierke asks this Court to conclude the trial court abused its discretion when it failed to grant her security for her spousal support. A court abuses its discretion where it acts "in an arbitrary, unreasonable, or unconscionable manner." *Usry v. Theusch*, 521 N.W.2d 918, 919 (N.D. 1994). The majority concludes the trial court did not abuse its discretion in refusing to order H.F. Gierke to purchase life insurance as security for his spousal support obligation. The majority correctly points out the district

court has the discretion to order security for spousal support. The Minnesota Supreme Court has provided several factors to consider in establishing the "exceptional circumstances" justifying such a security requirement. *Walker v. Walker*, 553 N.W.2d 90, 96 (Minn.Ct.App.1996) (citing *Arundel v. Arundel*, 281 N.W.2d 663, 667 (Minn.1979)). These factors include "an award of permanent maintenance, the long duration of a marriage, and the recipient spouse's age and lack of marketable skills" and an award of income producing property. *See id.; Rosenberg v. Rosenberg*, 379 N.W.2d 580, 586 (Minn.Ct.App.1985).

[¶ 49] In this case, given Judith Gierke's weak employment history, her age, her health problems, the long-term 28–year marriage, and the award of permanent spousal support, the trial court should have secured the award with life insurance. This is especially true, because the testimony of H.F. Gierke revealed a $600,000 life insurance policy was already in existence on his life and a second policy, the amount of which never came out in testimony, was also in existence. The trial court could have merely required H.F. Gierke to name Judith Gierke as a beneficiary on one of his existing life insurance policies.

[¶ 50] The majority concludes that because Judith Gierke is awarded permanent spousal support until her death she can proceed against H.F. Gierke's estate should he predecease her. What the majority fails to recognize is that there is no "estate" as of the date of the trial and, in fact, there is a negative estate and no evidence of any change in the near future. In the event of H.F. Gierke's death, Judith Gierke's financial situation clearly warrants the security she requests.

[¶ 51] Further, there is no indication the trial court ever assessed whether the circumstances of this case justified an award of security for its award of spousal support. I would reverse and remand to the trial court to amend the judgment and award security for the permanent spousal support. It is justified in this case where there is a negative marital estate, the spouse is awarded no income-producing property, there is a long-term marriage, and a disadvantaged spouse

who has health problems and is entering the work market at age 50. I would also remand for the trial court to determine whether an existing policy of life insurance should be utilized or whether a separate policy should be provided.

[¶ 52] For these reasons, I respectfully dissent.

[¶ 53] THOMAS J. SCHNEIDER, District Judge, concurs.

DONOVAN J. FOUGHTY, District Judge, concurring in part and dissenting in part.

[¶ 54] I concur with Justice Neumann under sections I, II, III, V, VI and VII of his opinion. Based on the reasoning set out in Justice Maring's opinion I would reverse and remand to the trial court to amend the Judgment and award an appropriate level of security for permanent spousal support. The trial court should determine whether an existing life insurance policy be utilized or whether a separate policy should be provided by H.F. Gierke.

[¶ 55] Donovan J. Foughty, District Judge.