1999 ND 107

**Deborah F. RIEHL, Plaintiff and Appellant,**

v.

**Andrew J. RIEHL, Defendant and Appellee.**

**No. 980246.**

Supreme Court of North Dakota.

June 18, 1999.

Sherry Mills Moore, of Foss and Moore, Bismarck, for plaintiff and appellant.

Brenda A. Neubauer, of Severin, Ringsak & Morrow, Bismarck, for defendant and appellee.

MARING, Justice.

[¶ 1] Deborah Riehl appeals from a district court judgment dated June 8, 1998, which granted the parties a divorce, divided their marital property, placed the parties' minor children in Deborah's custody, and ordered Andrew to pay rehabilitative spousal and child support. Deborah challenges the award of spousal support. We hold the trial court's decision to award rehabilitative spousal support for only the period of time commensurate with the recipient's period of rehabilitation is clearly erroneous. We reverse and remand the judgment of the district court.

I

[¶ 2] At the time of trial, Deborah was age 43 and Andrew was age 45. They had been married for 24 years and had four children. Only the two youngest children were minors at the time of trial. Early in the marriage, Andrew worked as a farm laborer and construction worker. He then attended night school at Bismarck State College (BSC) and after completing a welding program became a boilermaker working both in state and out. Since 1987 Andrew has worked as a boilermaker with Minnkota Power Company in Center, North Dakota. At the time of trial, Andrew was earning $51,352 annually. He is provided with life, disability, health and dental insurance, deferred compensation savings, a medical flex program, and a pension.

[¶ 3] Deborah's role during the marriage was primarily that of a homemaker. Over the years, she worked in positions of temporary employment, such as newspaper delivery, janitorial work, telemarketing, teacher's aide, and hotel maid. When the oldest two children entered school, Deborah was able to attend the University of Mary to work toward an elementary education degree. After one year of college, she again became pregnant and, after their fourth child was born, she became a full time homemaker.

[¶ 4] In the twelve months from the time the parties separated and the trial was held, Deborah pursued her education and employment options. She worked with the North Dakota Job Service and a private vocational counselor and underwent testing of her aptitudes, interests, and academic proficiency. She also attended adult education classes through the spring and summer of 1997 to prepare for her return to college. At the time of trial, Deborah had almost completed a program at BSC that exposed displaced homemakers to a variety of career options.

[¶ 5] The exploratory phase of her rehabilitation efforts directed her to the field of nursing. As a result, Deborah attended BSC in the fall of 1998 to complete basic science related courses which will allow her to enter a full-time college program to earn a bachelor degree in nursing. Deborah will begin the first two years of her nursing education by completing an LPN program through BSC. The program's cost of approximately $7,000 will be funded by a scholarship for which she qualified as a displaced homemaker. Upon completion of the LPN program, she will begin a bachelor of science in nursing (BSN) program at the University of Mary, which requires two to two and a half years to complete depending on course sequencing. The program's approximate cost will be between $18,800 and $23,500.

[¶ 6] Deborah commenced this divorce action on February 28, 1997. Shortly be-

fore trial, the parties stipulated to the equal division of marital property, allocation of debts, and custody of the minor children to Deborah. The trial court adopted the parties' agreement. Because the parties could agree to neither the amount and duration of spousal support, nor the amount of child support, these issues were presented to the court in a trial held on March 31, 1998. The trial court established child support for the two minor children at $949 per month, required Andrew to provide the children's health insurance and pay the first $210 annually of the children's uncovered medical, dental, optical, or orthodontic expenses, and pay $150 per month toward the children's tuition at a private, parochial school. Deborah requested spousal support in the amount of $1,000 a month for three years, reduced thereafter to $800 a month for six years and then $600 a month for the following six years. At that point, Andrew would be of retirement age and the support would cease. The trial court set spousal support at $800 per month for five years. Deborah appeals that award.

## II

[¶ 7] A trial court's spousal support determination is treated as a finding of fact which we will not set aside on appeal unless clearly erroneous. *Van Klootwyk v. Van Klootwyk*, 1997 ND 88, ¶ 13, 563 N.W.2d 377. A finding of fact is clearly erroneous under N.D.R.Civ.P. 52(a) only if it is induced by an erroneous view of the law, there is no evidence to support it, or, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made. *Id.* (citing *McDonough v. Murphy*, 539 N.W.2d 313, 316 (N.D.1995)).

[¶ 8] Trial courts in our state must consider the *Ruff–Fischer*[1] guidelines in making a determination of spousal

support, both as to amount and duration. The factors include:

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material.

*Van Klootwyk*, 1997 ND 88, ¶ 14, 563 N.W.2d 377 (quoting *Weir v. Weir*, 374 N.W.2d 858, 862 (N.D.1985)). Although a trial court need not make specific findings as to each factor, we must be able to discern a rationale for its determination. *Id.*

[¶ 9] To be awarded spousal support, the trial court must find the spouse to be "disadvantaged." *Wiege v. Wiege*, 518 N.W.2d 708, 711 (N.D.1994). A "disadvantaged" spouse is one who has "foregone opportunities or lost advantages as a consequence of the marriage and who has contributed during the marriage to the supporting spouse's increased earning capacity." *Van Klootwyk*, 1997 ND 88, ¶ 16, 563 N.W.2d 377. Here, the trial court found Deborah to be disadvantaged by the divorce because she "devoted her time and effort throughout the marriage of the parties to maintaining a marital residence and providing child care ... [and her] responsibilities have caused her to forego any opportunity for career development, resulting in her present earning capacity at less than one-fourth [of Andrew's]." Without giving a basis for the period of spousal support, the court awarded Deborah $800 per month for five years.

---

1. The *Ruff–Fischer* guidelines originate from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966), in which this Court recited a list of factors to be considered by trial courts in determining both marital property distribution and spousal support.

[¶ 10] The issue we are asked to address is whether the trial court's decision to award spousal support for a period commensurate with the time it would take Deborah to complete her education was clearly erroneous.

[¶ 11] Spousal support is aimed at balancing the burdens and disadvantages created by the divorce. We recognize permanent and rehabilitative spousal support as two distinct remedies. Permanent support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage. *Kautzman v. Kautzman*, 1998 ND 192, ¶ 19, 585 N.W.2d 561; *Donarski v. Donarski*, 1998 ND 128, ¶ 6, 581 N.W.2d 130; *Heley v. Heley*, 506 N.W.2d 715, 719 (N.D.1993); *see also* Marcia O'Kelly, *Entitlements to Spousal Support After Divorce*, 61 N.D.L.Rev. 225, 245 (1985).

[¶ 12] Rehabilitative spousal support, on the other hand, is appropriate when it is possible to restore an economically disadvantaged spouse to independent economic status, *Heley*, 506 N.W.2d at 719–20, or to equalize the burden of divorce by increasing the disadvantaged spouse's earning capacity. *Wahlberg v. Wahlberg*, 479 N.W.2d 143, 145 (N.D.1992). There are two approaches to awarding rehabilitative spousal support. *See Van Klootwyk*, 1997 ND 88, ¶ 15, 563 N.W.2d 377 (citing O'Kelly, *supra* at 242). One is the "minimalist doctrine" which has as its objective rehabilitating the recipient for minimal self-sufficiency. *Id.* We have rejected this doctrine in favor of the more "equitable" approach to determining rehabilitative spousal support, which attempts to provide education, training, or experience that will enable the recipient to achieve "adequate" or "appropriate" self-support while improving her employment skills. *Gierke v. Gierke*, 1998 ND 100, ¶ 22, 578 N.W.2d 522; *Van Klootwyk*, at ¶¶ 15, 24, 563 N.W.2d 377.

[¶ 13] There is no ready formula to determine what amounts to "adequate" or "appropriate" rehabilitative support. In making that determination, however, a trial court should consider the duration of the marriage, the parties' earning capacities, the value of the marital property and other *Ruff–Fischer* factors. *E.g., Van Klootwyk*, 1997 ND 88, ¶ 15, 563 N.W.2d 377. We have also said in a long-term marriage it is important to consider "[c]ontinuing a standard of living ... [or] balancing the burdens created by the separation when it is impossible to maintain two households at the predivorce standard of living." *Gronland v. Gronland*, 527 N.W.2d 250, 253 (N.D.1995) (citation omitted).

[¶ 14] Andrew initially argues the award of spousal support was equitable because Deborah received half of the marital property. Typically, the trial court should consider the marital property division when setting the amount of spousal support. *Wiege*, 518 N.W.2d at 711. Here, however, the parties stipulated to an equal division of the marital property. Each party received half the sale proceeds of their home and farmland, Deborah received half of Andrew's pension and 401(k), and the parties had no debt. Any income from these assets will presumably be the same for each party. Andrew's argument ignores the fact that the property division does not adjust the disparate earning capacities of the parties. Under these circumstances, the parties' property division had little bearing on the award of spousal support.

[¶ 15] Andrew also argues the award of spousal support was equitable because five years of spousal support adequately rehabilitates Deborah. At the end of five years, he argues, Deborah will be educated, self-supporting and able to "meet her needs." The flaw in his argument is that it endorses the "minimalist doctrine," an approach we have clearly rejected. *Gierke*, 1998 ND 100, ¶ 22, 578 N.W.2d 522; *Van Klootwyk*, 1997 ND 88,

¶¶ 15, 24, 563 N.W.2d 377. "Equitable" rehabilitative support goes further than minimal self-sufficiency; it aims to mitigate marital disadvantage caused by the impact at divorce of an economic role assumed during marriage.

[¶ 16] Deborah's BSN program will cost between $18,800 and $23,500, or approximately $315 to $390 per month over the five year period she will be receiving spousal support. After paying for her education, Deborah's rehabilitative spousal support will effectively range from $410 to $485 per month. At the end of five years, assuming all goes as planned, Deborah will have just completed her education and entered the work force as an entry-level registered nurse. During these five years, Deborah will have no other income other than interest income earned on her one-half of the marital assets. She will not be accumulating retirement or pension benefits. She will also have custody of the two younger children during the first three years and custody of the youngest through the fourth year. Meanwhile, Andrew will be earning a salary of at least $52,000 and substantial vested benefits. When Deborah enters the work force at the entry-level she will be 48 years old and earn approximately $27,000, roughly half of Andrew's salary. After deferring meaningful work and education for 24 years to raise her family and support her husband's career, Deborah will be just starting the pursuit of her own career.

[¶ 17] As we have said, rehabilitative spousal support aims to make up for the opportunities and development a disadvantaged spouse lost while assuming her economic role in the marriage. *E.g., Van Klootwyk*, 1997 ND 88, ¶¶ 15, 24, 563 N.W.2d 377. While we have not endorsed the "equalization of income between divorcing spouses," *Glander v. Glander*, 1997 ND 192, ¶ 18, 569 N.W.2d 262, we conclude the period of spousal support in this case does not adequately address the burdens of the divorce. Under these facts we are convinced a mistake was made when the trial court awarded spousal support to a homemaker of 24 years for a period commensurate with the length of re-education or rehabilitation at which time the disadvantaged spouse will only be able to earn half of what the payor spouse earns.

III

[¶ 18] Deborah argues the trial court's failure to consider permanent spousal support was clearly erroneous. As discussed, permanent spousal support is generally appropriate when the disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities she lost in the course of the marriage. *See Kautzman*, 1998 ND 192, ¶¶ 19, 20, 585 N.W.2d 561 (permanent spousal support appropriate where wife's "earning capacity will never approach [husband's]" and the parties enjoyed a "very comfortable standard of living"); *Donarski*, 1998 ND 128, ¶¶ 6, 8, 581 N.W.2d 130 (wife's "limited marketable job skills" and "the substantial disparity in income between the parties" justified award of permanent spousal support). Even when the disadvantaged spouse is capable of rehabilitation we have recognized permanent spousal support may be appropriate to equitably share the overall reduction in the parties' separate standard of living. *Weir*, 374 N.W.2d at 864 (permanent support appropriate because disadvantaged spouse "is likely to have a much lower income producing capacity than [the other spouse], which earning capacity she aided . . . in obtaining").

[¶ 19] Because this case involves a long-term marriage and the respective earning capacities and standards of living of the parties will be greatly disparate even after Deborah receives her RN degree, the trial court should consider whether permanent spousal support would also be equitable to offset the permanent economic disadvantage suffered by Deborah as a consequence of the time she has spent as a homemaker.

## IV

[¶ 20] The judgment is reversed and remanded to the trial court for consideration of a longer period of spousal support, factoring in Deborah's job-entry process, the parties disparate earning capabilities and standards of living, and Andrew's ability to pay.

[¶ 21] VANDE WALLE, C.J., and NEUMANN, and KAPSNER, JJ., concur.

SANDSTROM, Justice, dissenting.

[¶ 22] Because the majority is simply substituting its judgment for that of the district court, I dissent. *See Hogue v. Hogue,* 1998 ND 26, ¶ 9, 574 N.W.2d 579 (we will not retry the case or substitute our judgment for the district court's); *State v. Thompson,* 548 N.W.2d 778, 780 (N.D.1996) (we will not substitute our judgment for the district court's); *Schmidkunz v. Schmidkunz,* 529 N.W.2d 857, 859 (N.D.1995) (same). If there is a need to revisit spousal support in the future, the district court retains jurisdiction to do so. *Schmitz v. Schmitz,* 1998 ND 203, ¶ 2, 586 N.W.2d 490 (district court established spousal support and retained jurisdiction over it); *Gierke v. Gierke,* 1998 ND 100, ¶ 24, 578 N.W.2d 522 (court retains continuing jurisdiction to modify spousal support).

[¶ 23] I would affirm.

[¶ 24] Dale V. Sandstrom